# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1092

———————

| | | |
|---|---|---|
| Patti Beeler, as parent and natural guardian of her minor child, | * * * | |
| Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the Northern District of Iowa. |
| Michael J. Astrue, Social Security Commissioner, | * * * | |
| Appellant. | * | |

———————

Submitted: December 17, 2010
Filed: August 29, 2011

———————

Before WOLLMAN, BRIGHT, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

The Social Security Act authorizes the payment of benefits to the dependent children of deceased workers. This case requires us to determine whether a child conceived through artificial insemination more than a year after her father's death qualifies for benefits under the Act. The Commissioner of the Social Security Administration ("SSA") interprets the Act to provide that a natural child of the decedent is not entitled to benefits unless she has inheritance rights under state law or can satisfy certain additional statutory requirements. We conclude that the

Commissioner's interpretation is, at a minimum, reasonable and entitled to deference, and that the relevant state law does not entitle the applicant in this case to benefits. We therefore reverse the district court's contrary judgment.

I.

A.

Bruce and Patti Beeler met in February 2000, became engaged five months later, and planned to marry in May 2001. Before the wedding date, however, Bruce was diagnosed with acute leukemia and admitted to the University of Iowa Hospitals and Clinics ("UIHC") in Iowa City, Iowa. Doctors advised Bruce to undergo chemotherapy.

Before the treatments commenced, Patti read a brochure about chemotherapy and learned that it could cause sterility. Because Bruce and Patti wanted to have children, they arranged for Bruce to bank semen at the UIHC Fertility Clinic on November 6, 2000. Bruce began chemotherapy shortly thereafter and was hospitalized. His doctor advised him that chemotherapy would not succeed, and that a bone marrow transplant would be his only chance for survival. While Bruce was in the hospital, Bruce and Patti decided to reschedule their wedding to December 2000.

In December, Bruce was released from the hospital and returned to work. Bruce and Patti were married at home later that month. In January 2001, Bruce developed an infection and returned to the hospital. Bruce's doctor informed him that his life expectancy without a bone marrow transplant was approximately six months, and that even with a transplant, his chances of long-term survival were only about 50 percent. Bruce began making plans for his death, including funeral arrangements.

In February 2001, the Beelers turned their attention to the disposition of Bruce's banked semen. On February 12,[1] Bruce signed the hospital's Form 61, in which he bequeathed the semen to Patti and provided that the semen could be used only by Patti in the event of his death. On the same day, the Beelers also signed the hospital's Form 151. Entitled "Agreement of Understanding," Form 151 provides that the signatories "desire[] the female partner to be artificially inseminated or oocytes inseminated in vitro for the purpose of conceiving a child." The form also states that the "[m]ale partner hereby agrees to accept and acknowledge paternity and child support responsibility of any resulting child or children."

Two days after the Beelers signed the forms, Bruce underwent a bone marrow transplant. The transplant was unsuccessful, and by late April, it became clear that Bruce would not survive. Patti later stated that Bruce was comforted during this time by his belief that Patti would have his children after he died. Bruce's mother averred that Bruce hoped that Patti would bear his children after his death. Bruce died on May 4, 2001, at the age of 37. At the time of his death, he was domiciled in the State of Iowa.

After Patti lost her employment in August 2001, she decided to wait until she secured a new full-time job with benefits before she attempted to conceive a child using Bruce's frozen semen. On July 25, 2002, Patti conceived a child after undergoing intra-uterine insemination. Her daughter, B.E.B., was born on April 28, 2003. Bruce is listed as B.E.B.'s father on her birth certificate, and it is undisputed that B.E.B. is Bruce's biological daughter.

---

[1]In an affidavit, Patti Beeler indicated that Bruce signed Form 61 in November 2000, shortly before he began chemotherapy. The only signed copy of Form 61 in the record bears a date of February 12, 2001.

On June 2, 2003, Patti Beeler filed an application for child's insurance benefits on behalf of B.E.B. The SSA denied the application and a request for reconsideration, and Beeler requested a hearing before an administrative law judge ("ALJ"). Following a hearing in March 2008, the ALJ sent the case to the agency's Appeals Council with a recommended decision concluding that B.E.B. was not entitled to benefits. *See* 20 C.F.R. § 404.953(c). On December 22, 2008, the Appeals Council, based on its review and application of the Act, regulations, rulings, and acquiescence rulings, issued an opinion determining that B.E.B. "is not the child of the wage earner *within the meaning of the Social Security Act* (Act) and is not entitled to benefits." This opinion is the agency's final decision on the matter.

On February 13, 2009, Beeler sued the Commissioner of Social Security, seeking review of the SSA's denial of benefits. The district court reversed the SSA's decision and remanded the matter to the agency with instructions to calculate and award benefits for B.E.B. The district court denied the Commissioner's motion to alter or amend the judgment, and the Commissioner filed a timely notice of appeal.

B.

In 1935, Congress enacted the Social Security Act, ch. 531, 49 Stat. 620 (codified as amended at 42 U.S.C. § 301 *et seq.*), which provides for monthly benefit payments to workers who reach a certain age and who meet other established criteria. Four years later, Congress amended the Act to provide for benefit payments to the family members of deceased wage earners. The Social Security Act Amendments of 1939, ch. 666, 53 Stat. 1360, included a provision, currently codified at 42 U.S.C. § 402(d), that authorizes the payment of "child's insurance benefits" to the children of deceased workers if certain conditions are met. *See id.* § 201, 53 Stat. at 1364-65 (amending section 202(c) of the Social Security Act).

-4-

To be eligible for child's insurance benefits, a minor child of a deceased wage earner must satisfy several criteria outlined in 42 U.S.C. § 402(d)(1). Specifically, an applicant is eligible for benefits if she is (1) a "child (as defined in section 416(e) of this title)," (2) of a fully insured individual, (3) who has filed an application for child's insurance benefits, (4) is unmarried and under 18 years old, and (5) was dependent upon the fully insured individual at the time of the insured individual's death. 42 U.S.C. § 402(d)(1)(A)-(C). The Commissioner contends that B.E.B. is not eligible for benefits, because she is not a "child" within the meaning of the Act, and was not dependent on the wage earner at the time of his death. There is no dispute that Bruce Beeler was a fully insured individual at the time of his death, that an application for benefits has been filed on B.E.B.'s behalf, and that B.E.B. is unmarried and under 18 years old.

As noted, to qualify for child's insurance benefits, an applicant must be a "child as defined in" 42 U.S.C. § 416(e). 42 U.S.C. § 402(d)(1) (parenthesis omitted). Section 416(e) enumerates three categories of persons who are a "child," only the first of which is at issue here: "The term 'child' means (1) the child or legally adopted child of an individual." *Id.* § 416(e). The statute continues that "child" also means a stepchild, grandchild, or stepgrandchild under certain circumstances, but Beeler does not invoke those aspects of the definition. The agency's regulations refer to "child" in the first enumeration as a "natural child," to distinguish such an applicant from an adopted child, stepchild, grandchild, or stepgrandchild. *See* 20 C.F.R. § 404.354; Application of State Law in Determining Child Relationship, 63 Fed. Reg. 57,590, 57,592 (Oct. 28, 1998) (equating the term "natural child" with the term "child (as opposed to a legally adopted child, a stepchild, or other type of individual who can qualify under section 216(e) of the Act as a 'child' for purposes of section 202(d) of the Act)"); *cf. Weinberger v. Salfi*, 422 U.S. 749, 781 n.12 (1975) (using the term "natural child" to refer to a "child," as that word is used in the definition of "child" in § 416(e)).

After defining other terms, the statute includes a subsection entitled "Determination of family status," 42 U.S.C. § 416(h). One provision thereunder states:

> *In determining whether an applicant is the child* or parent of a fully or currently insured individual for purposes of this subchapter, *the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property* . . . , if such insured individual is dead, *by the courts of the State in which he was domiciled at the time of his death* . . . . Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

42 U.S.C. § 416(h)(2)(A) (emphasis added). If an applicant "is not (and is not deemed to be) the child" of such insured individual under § 416(h)(2), but is the "son or daughter" of an insured individual, then the applicant "shall nevertheless be deemed to be the child of such insured individual" if before the wage earner's death, the wage earner "acknowledged in writing that the applicant is his or her son or daughter." *Id.* § 416(h)(3)(C)(i)(I).[2]

---

[2]Section 416(h) specifies other situations in which an applicant may be deemed a "child," none of which is at issue here: An applicant may be deemed a "child" if the insured individual and the child's other parent "went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment . . . would have been a valid marriage," *id.* § 416(h)(2)(B), if the Commissioner determines that the wage earner is the parent of the applicant and the wage earner was living with or supporting the applicant at the time of the wage earner's death, *id.* § 416(h)(3)(C)(ii), or if the applicant is the son or daughter of an insured individual who while living was decreed by a court to be the parent of the applicant, or was ordered by a court to pay child support for the applicant's benefit. *Id.* § 416(h)(3)(C)(i)(II)-(III).

An applicant for child's insurance benefits also must show that she was dependent on the wage earner at the time of his death. *Id.* § 402(d)(1)(C)(ii). The parties agree that if B.E.B. qualifies as a "child" under any provision of § 416(h), then she will automatically satisfy the Act's dependency requirement. *See* 42 U.S.C. § 402(d)(3); *Mathews v. Lucas*, 427 U.S. 495, 514 n.17 (1976); 20 C.F.R. § 404.361.

The dispute in this case centers on the relationship between § 416(e) and § 416(h), and the SSA regulations implementing those provisions. The Appeals Council concluded that B.E.B. is not a "child" of Bruce Beeler within the meaning of the Social Security Act.[3] The Commissioner argues that this decision was correct, because § 416(h) is the exclusive means by which an applicant can qualify as a "natural child" – that is, a "child" under the first enumeration in § 416(e). Beeler argues that the provisions in § 416(h) are mere "savings clauses," which allow an applicant who does not qualify as a "child" under § 416(e) to be deemed a "child" nonetheless. Under Beeler's interpretation, which was adopted by the district court, an applicant who is the undisputed biological child of an insured individual necessarily qualifies as a "child" within the meaning of § 416(e), and no reference to § 416(h) is necessary.

II.

We review *de novo* a district court's decision reversing a denial of social security benefits, *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.

---

[3]The Appeals Council also addressed whether B.E.B. was "dependent" on the deceased at the time of his death, within the meaning of 42 U.S.C. § 402(d)(1). As part of this analysis, the Appeals Council determined that B.E.B. did not satisfy the criteria for "natural child" status under 42 U.S.C. §§ 416(h)(2)(A), 416(h)(2)(B), or 416(h)(3). We understand the agency's decision to conclude both that B.E.B. is not a "child" of a wage earner within the meaning of §§ 402(d)(1) and 416(e), and that B.E.B. was not "dependent" on a wage earner within the meaning of § 402(d)(1)(C).

2004), and we will affirm the Commissioner's denial of benefits if substantial evidence in the record as a whole supports the decision, and the Commissioner correctly applied the relevant legal standards. *See* 42 U.S.C. § 405(g); *Mason v. Barnhart*, 406 F.3d 962, 964 (8th Cir. 2005). Whether § 416(h) is the exclusive means by which an applicant can qualify for "child" status as a natural child within the meaning of § 416(e) is a question of statutory interpretation that we review *de novo*. *Crane v. Sullivan*, 993 F.2d 1335, 1336 (8th Cir. 1993). When Congress has delegated authority to an administrative agency to interpret and implement a federal statute, we give the agency's interpretation deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, the agency's "view governs if it is a reasonable interpretation of the statute – not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 129 S. Ct. 1498, 1505 & n.4 (2009).

## A.

*Chevron* deference is appropriate "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Here, the relevant regulations are the product of notice-and-comment rulemaking, and the regulations were issued pursuant to the Commissioner's statutory authority to promulgate rules that are "necessary or appropriate to carry out" his functions and the relevant statutory provisions. *See* 42 U.S.C. §§ 405, 902; Application of State Law in Determining Child Relationship, 63 Fed. Reg. at 57,593. As such, they are controlling if reasonable. *See Mead*, 533 U.S. at 230.

The agency's general regulation regarding the criteria for "child" status under § 416(e) is 20 C.F.R. § 404.354. This provision states in part: "You may be related

-8-

to the insured person in one of several ways and be entitled to benefits as his or her child, i.e., as a *natural child*, legally adopted child, stepchild, grandchild, stepgrandchild, or equitably adopted child." 20 C.F.R. § 404.354 (emphasis added). Section 404.354 refers the reader to subsequent sections of the Code of Federal Regulations, 20 C.F.R. §§ 404.355 to 404.359, "[f]or details on how we determine your relationship to the insured person." *Id*. Section 404.355 – entitled "Who is the insured's natural child?" – provides that "[y]ou may be eligible for benefits as the insured's natural child if any of the following conditions is met." *Id.* § 404.355(a). That statement is followed by a list of four conditions for "natural child" status that closely track the statutory criteria for "child" status in § 416(h)(2)(A), § 416(h)(2)(B), and § 416(h)(3). The regulations provide different sets of qualifications for adopted children, stepchildren, grandchildren, and stepgrandchildren, who – unlike natural children – are not required to satisfy one of the relevant provisions of § 416(h). *See id.* §§ 404.356 to 404.359. According to the Commissioner, the regulations confirm that an applicant can qualify as a natural "child" within the meaning of § 416(e) only by meeting one of the criteria outlined in § 416(h). The SSA restated this view, albeit without notice and comment, in an acquiescence ruling issued after a decision unfavorable to the agency's position in *Gillett-Netting v. Barnhart*, 371 F.3d 593 (9th Cir. 2004). *See* Social Security Acquiescence Ruling 05-1(9), 70 Fed. Reg. 55,656, 55,657 (Sept. 22, 2005) ("Section 216(h) provides the analytical framework that we must follow for determining whether a child is the insured's child for the purposes of section 216(e).").

Beeler argues that § 404.354's reference to "a natural child" supports her view that an undisputed biological child of the insured is necessarily a "child" within the meaning of § 416(e). Beeler acknowledges that § 404.355 applies to natural children and effectively repeats the relevant provisions of § 416(h). But she asserts that the regulation does not exclude the possibility that "natural child" status can be established by other means, such as an undisputed biological relationship. Beeler emphasizes that the regulation says "you *may* be eligible for benefits as a natural

-9-

child" if certain conditions are met, and argues that if the four listed criteria were meant to be the exclusive means of acquiring "natural child" status, then the regulation would have said so.

We see no latent ambiguity. The regulations make clear that the SSA interprets the Act to mean that the provisions of § 416(h) are the exclusive means by which an applicant can establish "child" status under § 416(e) as a natural child. It would be passing strange for the agency to promulgate a regulation dedicated specifically to answering the key question – "Who is the insured's natural child?" – and then to omit one prominent answer. The agency's acquiescence ruling in reaction to *Gillett-Netting* reaffirmed its longstanding position. *See* 20 C.F.R. § 404.1101 (Supp. 1952) ("Whether an applicant for benefits or a lump sum is the . . . child . . . of the individual upon whose wages and self-employment income the application is based . . . is determined by 'applicable State law.' By this is meant the law the courts of the State of the domicile of such individual would apply in deciding who is a . . . child . . . when determining the devolution of such individual's intestate personal property."). And the rule's use of the term "may" is consistent with this interpretation, because the word "may" refers to an applicant's "eligib[ility] for benefits," not to her status "as the insured's natural child." *Id.* § 404.355(a). The applicant "*may* be eligible" (not *will* be eligible) for benefits if she satisfies the conditions for "natural child" status, because a successful applicant for child's insurance benefits *also* must meet other requirements concerning dependency, age, and marital status. *See* 42 U.S.C. § 402(d)(1). Even if there were a sliver of ambiguity in the regulations, an agency's interpretation of its own ambiguous regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation omitted); *see also Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878-79 (8th Cir. 2011); *Thomas v. Jackson*, 581 F.3d 658, 664 (8th Cir. 2009); *cf. Talk Am., Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct.

2254, 2266 (2011) (Scalia, J., concurring). The Commissioner's interpretation easily passes muster under *Auer*.

Beeler also argues that the Commissioner's position does not deserve deference because the agency adopted a contrary position in the preamble to a 1998 revision of the relevant regulations. The 1998 preamble recognized that "[a] child of a valid marriage has inheritance rights under the laws of all States," implying that such a child always will qualify as a natural child by satisfying § 416(h)(2)(A). Application of State Law in Determining Child Relationship, 63 Fed. Reg. at 57,591. Beeler contends that a posthumously conceived child whose parents were validly married comes within this preamble. But the agency could not have meant for "child of a valid marriage" to include a posthumously conceived child, because a number of States refused to grant such children intestate inheritance rights at all or unless they satisfied additional requirements. *See Vernoff v. Astrue*, 568 F.3d 1102, 1111 & n.9 (9th Cir. 2009) (collecting state statutes). The agency's reference to "child of a valid marriage" was limited to a class of children that "has inheritance rights under the laws of *all* States."

Beeler is also incorrect that the preamble "implies that state intestacy law will matter only with regard to children 'born out of wedlock.'" The preamble speaks of all biological children, not merely a subset: "Our policy for determining whether an applicant qualifies as the 'child' of an insured individual has always been that *we apply State law on inheritance rights to determine the status under the Act of a natural child, i.e., biological child . . . .*" Application of State Law in Determining Child Relationship, 63 Fed. Reg. at 57,592 (emphasis added); *see also* 20 C.F.R. § 404.1101 (Supp. 1952); Social Security Acquiescence Ruling 05-1(9), 70 Fed. Reg. at 55,657.

Finally, Beeler contends that the agency's position is not entitled to deference because it conflicts with the agency's own policy manual and the ruling of the

agency's Appeals Council. The manual states that a "natural legitimate child" – defined as "a child who is born to the parent, i.e., biological child . . . who was born of a valid marriage" – "[h]as inheritance rights in the parent's estate under the laws of all States." Social Security Administration, Program Operations Manual System ("POMS") § GN 00306.010(A)-(B). It further provides that a birth certificate with the parents' names "may [be] accept[ed] . . . as proof that a natural legitimate parent-child relationship exists." *Id.* § GN 00306.010(D)(2)(a). In Beeler's view, because B.E.B.'s birth certificate bears her father's name, the agency's policy manual provides that B.E.B. is necessarily a "natural legitimate child" with inheritance rights who is entitled to benefits.

As with the 1998 preamble, the agency could not have intended to include a posthumously conceived child when the manual speaks of a "natural legitimate child." The manual states as a factual matter that *all* natural legitimate children – defined as biological children born of a valid marriage – have inheritance rights under the laws of *all* States, but a number of States do not provide such rights to all posthumously conceived children. *See Vernoff*, 568 F.3d at 1111 & n.9. Another provision of the manual, moreover, expressly requires posthumously conceived children seeking benefits to qualify under § 416(h). *See* POMS § GN 00306.001(C)(1)(c) ("A child conceived by artificial means after the [insured's] death . . . can only be entitled if he or she has inheritance rights under applicable State intestacy law."). Although Beeler portrays this provision as "cryptic" and "based on a mistake of fact or law," it addresses the precise question at issue, and there is no inconsistency between the agency's manual and the Commissioner's interpretation of the governing regulations. As for the ruling of the Appeals Council, which held that B.E.B. was not entitled to benefits because she could not satisfy any of the relevant provisions of § 416(h), we see no conflict with the agency's longstanding position.

In sum, the agency's regulations and policy statements interpreting the relevant statutory provisions constitute an authoritative construction of the Act that is entitled to *Chevron* deference. The SSA has construed the Act to provide that applicants may attain "child" status as a natural child, within the meaning of § 416(e), only by satisfying the criteria outlined in § 416(h)(2)(A), § 416(h)(2)(B), or § 416(h)(3). "[T]he interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue." *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).

B.

We next consider whether the agency's interpretation of the statute is reasonable. There is a conflict in the circuits on that question. In a case involving a posthumously conceived child, the Ninth Circuit held in *Gillett-Netting*, 371 F.3d 593, that natural children whose parentage is undisputed necessarily qualify as "children" under § 416(e), and that § 416(h) applies only to applicants whose parentage is in dispute. *Id.* at 596-97. The Third Circuit adopted that view in *Capato ex rel. B.N.C. v. Commissioner of Social Security*, 631 F.3d 626 (3d Cir. 2011), *petition for cert. filed*, 2011 WL 3511023 (U.S. Aug. 8, 2011) (No. 11-159). Most recently, the Fourth Circuit, in a thorough opinion, disagreed with the Ninth and Third Circuits, and held that the SSA's interpretation of the statute is correct. *Schafer v. Astrue*, 641 F.3d 49 (4th Cir. 2011); *see also Finley v. Astrue*, 601 F. Supp. 2d 1092, 1108 (E.D. Ark. 2009) (questioning whether the Eighth Circuit would follow *Gillett-Netting*). This court has suggested that all natural children applying for benefits must satisfy one of the § 416(h) criteria in order to attain the requisite "child" status, but we have not addressed the question in the context of posthumous conception. *See Voss v. Shalala*, 32 F.3d 1269, 1271 (8th Cir. 1994); *Cooper ex rel.*

*Cooper v. Sullivan*, 985 F.2d 390, 390 (8th Cir. 1993) (per curiam); *Zahradnik v. Sullivan*, 966 F.2d 355, 356 (8th Cir. 1992); *Sherrill ex rel. Sherrill v. Bowen*, 835 F.2d 166, 168 (8th Cir. 1987) (per curiam).

The text of the statutes favors the Commissioner's position. On its face, § 416(h)(2)(A) clearly directs the Commissioner to determine the status of a posthumously conceived child by reference to state intestacy law: "*In determining whether an applicant is the child* . . . of a fully or currently insured individual *for purposes of this subchapter*, the Commissioner of Social Security *shall* apply [state intestacy law]." 42 U.S.C. § 416(h)(2)(A) (emphasis added). "The text in short could hardly be more clear." *Schafer*, 641 F.3d at 54.

Beeler contends that a biological child is necessarily a "child" under § 416(e), and that § 416(h) is thus irrelevant to B.E.B.'s situation. She emphasizes that neither subsection refers to the other and that § 402(d)(1) requires an applicant to qualify as a "child" "as defined in section 416(e)," without mentioning § 416(h). These points are insufficient to establish unambiguously that a posthumously conceived biological child is necessarily a "child" under § 416(e). Section 416(h) does not expressly refer to § 416(e), but it plainly says that the Commissioner "shall" use state intestacy law in determining whether an applicant is the "child" of an insured individual "for purposes of this subchapter," and § 416(e) is part of the subchapter. If natural "child" in § 416(e) is further defined by § 416(h), then Congress can incorporate the definitional provisions of § 416(h) without an explicit cross-reference to that subsection. It is reasonable for the Commissioner to conclude that § 402(d)(1)'s cross-reference to § 416(e) picks up all subsidiary provisions that flow back through § 416(e). This interpretation is fortified by the fact that Congress elsewhere required proof beyond undisputed biological parentage to obtain "child" status under § 416(e). *See* 42 U.S.C. § 416(h)(2)(B), (h)(3)(C)(ii). If Beeler were correct that undisputed biological parentage alone were sufficient, then the statutory provisions requiring more evidence in some cases would be superfluous. *See Schafer*, 641 F.3d at 55.

Beeler also focuses on the last sentence of § 416(h)(2)(A), which provides: "Applicants who according to such [state intestacy] law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such." 42 U.S.C. § 416(h)(2)(A). Beeler contends that this sentence demonstrates that § 416(h)(2)(A) is designed solely to "deem" nonchildren to be children, and that it has no relevance to an applicant whose status as a "child" is undisputed. The opening sentence of the subsection, however, directs the Commissioner to apply state intestacy law "[i]n determining whether an applicant *is* the child" of an insured individual. *Id.* (emphasis added). Section 416(h)(2)(A) must be construed as a whole, and the first sentence is reasonably read as an all-encompassing directive for determining whether an applicant is a natural child. The last sentence is reasonably understood as making clear that an applicant who is permitted to inherit from the insured individual as his "child" under state intestacy law qualifies as a "child" for purposes of § 416(h)(2)(A), even if the applicant is not actually a child of the insured individual. *See* 20 C.F.R. § 404.355(b)(1); *id.* § 404.1102 (Supp. 1952).

The Ninth Circuit relied heavily on the Act's legislative history to conclude that biological paternity alone is sufficient to establish that an applicant is a "child" within the meaning of the Act, and the Third Circuit cited this analysis in its opinion. *See Capato*, 631 F.3d at 630; *Gillett-Netting*, 371 F.3d at 596-97. The Ninth Circuit believed that the relevant provisions of § 416(h) "have no relevance to the issue before us," because those provisions "were added to the Act to provide various ways in which children could be entitled to benefits even if their parents were not married or their parentage was in dispute." *Gillett-Netting*, 371 F.3d at 596.

Aside from whether legislative history would be sufficient to render unreasonable an interpretation that is amply supported by the statutory text, the *Gillett-Netting* opinion misreads the legislative history. A provision directing the Commissioner to apply state intestacy law to determine whether an applicant is a "child" has been part of the Social Security Act all along. When Congress first

-15-

established a system of child's insurance benefits in 1939, the relevant statutory language was similar to the current § 402(d)(1), § 416(e), and § 416(h). The predecessor of § 402(d)(1) provided that an applicant for benefits had to be a "child (as defined in section 209(k))." Social Security Act Amendments of 1939, § 201, 53 Stat. at 1364 (amending § 202(c) of the Act). Section 209(k) of the Act, the precursor to 42 U.S.C. § 416(e), stated that the "term 'child' . . . means the child of an individual, and the stepchild of an individual . . . , and a child legally adopted by an individual." *Id.* at 1377 (amending the Act to add § 209(k)). Congress also included § 209(m) – the forerunner of the current 42 U.S.C. § 416(h) – providing that "[i]n determining whether an applicant is the wife, widow, child, or parent of a fully insured or currently insured individual for purposes of this title, the [Social Security] Board shall apply such law as would be applied in determining the devolution of intestate personal property." *Id.* at 1378.

In 1965, when Congress added the language now codified at 42 U.S.C. § 416(h)(3), *see* Social Security Amendments of 1965, Pub. L. 89-97, 79 Stat. 286, 409-410, the relevant committee report explained that state intestacy law already governed: "*Under present law*, whether a child meets the definition of a child for the purpose of getting child's insurance benefits based on his father's earnings *depends on the laws applied in determining the devolution of interstate personal property in the State in which the worker is domiciled.*" S. Rep. No. 89-404, at 109 (1965) (emphases added); *see also* 111 Cong. Rec. 18,383, 18,387 (1965) (statement of Rep. Mills). The report indicates that the committee believed the existing eligibility requirements were too strict, because they disqualified many illegitimate natural children who lacked inheritance rights under state intestacy law. S. Rep. No. 89-404, at 109-10. By adding the language now codified at § 416(h)(3), the committee hoped to provide alternative means for natural children to qualify as "children," even if they lacked inheritance rights under state intestacy law. *Id.* But this does not mean the committee thought § 416(h) applied only to illegitimate children or to children whose parentage is disputed. The preexisting statutory framework already established that

-16-

a natural child must show an ability to inherit under state law in order to receive child's insurance benefits under the Act. *See Schafer*, 641 F.3d at 57 (citing cases).

## III.

We thus turn to the question whether B.E.B. qualifies as a natural child of the decedent under § 416(h). We consider state law in effect at the time of the final agency decision. *See* 20 C.F.R. § 404.355(b)(4). The first question is whether B.E.B. would have inheritance rights as a child under Iowa intestacy law. 42 U.S.C. § 416(h)(2)(A). The Iowa Code includes a section entitled "Afterborn heirs – time of determining relationship," which reads as follows:

> Heirs of an intestate, begotten before the intestate's death but born thereafter, shall inherit as if they had been born in the lifetime of the intestate and had survived the intestate. With this exception, the intestate succession shall be determined by the relationships existing at the time of the death of the intestate.

Iowa Code § 633.220.

With one exception – heirs "begotten" before the intestate's death – the statute limits intestate inheritance for afterborn heirs to those who had a "relationship" with the decedent at the time of his death. "As generally used, the word 'beget' means to procreate, to produce." *Ault v. Hillyard*, 115 N.W. 1030, 1031 (Iowa 1908). B.E.B. was not "begotten" before Bruce Beeler died, because she was not conceived until more than a year after his death. For the same reason, she did not have an existing "relationship" with Bruce Beeler at the time of his death, and she is not entitled to inheritance rights under Iowa law.

The district court agreed that Beeler could not inherit under § 633.220, but thought she qualified under Iowa Code § 633.222. That section, entitled "Biological

-17-

child – inherit from father," provides that a biological child inherits from her biological father if [1] "the evidence proving paternity is available during the father's lifetime, or [2] if the child has been recognized by the father as his child." Iowa Code § 633.222. We do not construe § 633.222 to provide for inheritance by an afterborn heir who cannot meet the criteria of § 633.220. Section 633.220 specifically addresses when an afterborn heir may inherit, and this specific section governs over the more general provision concerning all biological children. *See McElroy v. State*, 637 N.W.2d 488, 494 (Iowa 2001). In any event, even applying § 633.222, Bruce Beeler had not "recognized" B.E.B. as his child before his death. Unlike the unborn child in *Evjen v. Novotny* (*In re Estate of Evjen*), 448 N.W.2d 23 (Iowa 1989), who had been "recognized" *in utero* by his father, B.E.B. had not been conceived at the time of Bruce Beeler's death. It would stretch the statutory language too far to say that a child not yet in existence can be "recognized" by a man as "his child."

Beeler also contends that B.E.B. qualifies as a "child" under § 416(h)(3)(C)(i)(I). This provision allows an applicant who does not qualify as a natural child under § 416(h)(2)(A) or § 416(h)(2)(B) to be "deemed" a natural child if the insured individual, prior to his death, "acknowledged in writing that the applicant is his . . . son or daughter." 42 U.S.C. § 416(h)(3)(C)(i)(I). Beeler points to Bruce Beeler's statements that he hoped his wife would have his children after his death, and his signature on a hospital form stating that he "hereby agrees to accept and acknowledge paternity and child support responsibility of any resulting child or children" that were created by using his frozen semen. The agency reasonably concluded that these statements are insufficient to satisfy § 416(h)(3)(C)(i)(I). The hospital form does not directly acknowledge paternity of a child. The signatory only "*agrees to . . . acknowledge* paternity . . . of any resulting child or children" at some point in the future. J.A. 53 (emphasis added). Even if Bruce Beeler had sought to acknowledge in February 2001 paternity of all potential future children conceived from his semen after his death, the statute's use of the definite article – requiring an "acknowledg[ment] in writing that *the* applicant is his . . . son or daughter" –

-18-

indicates that the insured must acknowledge a particular child in order for that child to be deemed a natural child. *See Flandreau Santee Sioux Tribe v. United States*, 197 F.3d 949, 952 (8th Cir. 1999). No such acknowledgment was possible here, because B.E.B. was not yet conceived when Bruce Beeler died.

\* \* \*

The death of Bruce Beeler at a relatively young age before he and Patti Beeler could conceive children is profoundly sad. But whether the granting of child's insurance benefits to B.E.B., a posthumously conceived child, would further the purposes of the Social Security Act is debatable, given the Act's "basic aim of primarily helping those children who lost support after the *unanticipated death* of a parent." *Schafer*, 641 F.3d at 58 (emphasis added). It is unlikely that Members of Congress contemplated this precise question when enacting the relevant provisions of the Act in the 1930s and 1960s. At a minimum, however, the Act permits the longstanding position of the SSA, if the Act does not require it. *Cf. id*. at 60. As the law now stands, it resolves the question of eligibility for child's insurance benefits by reference to state intestacy law, and Iowa law did not provide B.E.B. with intestacy rights at the time of the agency's final decision in this litigation.[4]

---

[4]While this appeal was pending, the State of Iowa enacted a law that provides intestate succession rights to posthumously conceived children under certain circumstances. See 2011 Iowa Legis. Serv. H.F. 245 (West), § 2 (codified at Iowa Code § 633.220A). Beeler does not contend that this new statute grants intestate succession rights to B.E.B., and the governing federal regulations advise an applicant that in construing state intestacy law, the Social Security Administration will consider "any version of State law in effect from the first month for which you could be entitled to benefits *up until our final decision* on your application." 20 C.F.R. § 404.355(b)(4) (emphasis added). The decision of the Appeals Council on December 22, 2008, was the agency's final decision in this case, *see Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010), and the new Iowa statute does not indicate that it is retroactive to the time of Bruce Beeler's death. *See* 20 C.F.R. § 404.355(b)(4)(i).

For these reasons, the Commissioner's denial of benefits was supported by reasonable construction of the governing statutes and regulations, and by substantial evidence on the record as a whole. The judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the Commissioner.

_____

The new Iowa law is therefore not applicable.