(Slip Opinion)          OCTOBER TERM, 2011          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ASTRUE, COMMISSIONER OF SOCIAL SECURITY *v.* CAPATO, ON BEHALF OF B. N. C. ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 11–159.   Argued March 19, 2012—Decided May 21, 2012

Eighteen months after her husband, Robert Capato, died of cancer, respondent Karen Capato gave birth to twins conceived through in vitro fertilization using her husband's frozen sperm. Karen applied for Social Security survivors benefits for the twins. The Social Security Administration (SSA) denied her application, and the District Court affirmed. In accord with the SSA's construction of the Social Security Act (Act), the court determined that the twins would qualify for benefits only if, as 42 U. S. C. §416(h)(2)(A) specifies, they could inherit from the deceased wage earner under state intestacy law. The court then found that Robert was domiciled in Florida at his death, and that under Florida law, posthumously conceived children do not qualify for inheritance through intestate succession. The Third Circuit reversed. It concluded that, under §416(e), which defines child to mean, *inter alia,* "the child or legally adopted child of an [insured] individual," the undisputed biological children of an insured and his widow qualify for survivors benefits without regard to state intestacy law.

*Held:* The SSA's reading is better attuned to the statute's text and its design to benefit primarily those supported by the deceased wage earner in his or her lifetime. Moreover, even if the SSA's longstanding interpretation is not the only reasonable one, it is at least a permissible construction entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837. Pp. 4–16.

   (a) Congress amended the Act in 1939 to provide that, as relevant here, "[e]very child (as defined in section 416(e) of this title)" of a de-

ceased insured individual "shall be entitled to a child's insurance benefit." §402(d). Section 416(e), in turn, defines "child" to mean: "(1) the child or legally adopted child of an individual, (2) a stepchild [under certain circumstances], and (3) . . . the grandchild or stepgrandchild of an individual or his spouse [under certain conditions]." Unlike §§416(e)(2) and (3), §416(e)(1) lacks any elaboration of the conditions under which a child qualifies for benefits. Section 416(h)(2)(A), however, further addresses the term "child," providing: "In determining whether an applicant is the child or parent of [an] insured individual for purposes of this subchapter, the Commissioner of Social Security shall apply [the intestacy law of the insured individual's domiciliary State]." An applicant who does not meet §416(h)(2)(A)'s intestacy-law criterion may nonetheless qualify for benefits under other criteria set forth in §§416(h)(2)(B) and (h)(3), but respondent does not claim eligibility under those other criteria. Regulations promulgated by the SSA closely track §§416(h)(2) and (3) in defining "[w]ho is the insured's natural child," 20 CFR §404.355. As the SSA reads the statute, 42 U. S. C. §416(h) governs the meaning of "child" in §416(e)(1) and serves as a gateway through which all applicants for insurance benefits as a "child" must pass. Pp. 4–7.

(b) While the SSA regards §416(h) as completing §416(e)'s sparse definition of "child," the Third Circuit held, and respondent contends, that §416(e) alone governs whenever the claimant is a married couple's biological child. There are conspicuous flaws in the Third Circuit's and respondent's reading; the SSA offers the more persuasive interpretation. Pp. 7–15.

(1) Nothing in §416(e)'s tautological definition suggests that Congress understood the word "child" to refer only to the children of married parents. The dictionary definitions offered by respondent are not so confined. Moreover, elsewhere in the Act, Congress expressly limited the category of children covered to offspring of a marital union, see §402(d)(3)(A), and contemporaneous statutes similarly distinguish child of a marriage from the unmodified term "child." Nor does §416(e) indicate that Congress intended "biological" parentage to be prerequisite to "child" status. A biological parent is not always a child's parent under law. Furthermore, marriage does not necessarily make a child's parentage certain, nor does the absence of marriage necessarily make a child's parentage uncertain. Finally, it is far from obvious that respondent's proposed definition would cover her posthumously conceived twins, for under Florida law a marriage ends upon the death of a spouse. Pp. 8–10.

(2) The SSA finds a key textual cue in §416(h)(2)(A)'s opening instruction: "In determining whether an applicant is the child . . . of [an] insured individual for purposes of this subchapter," the Commis-

sioner shall apply state intestacy law. Respondent notes the absence of any cross-reference in §416(e) to §416(h), but she overlooks that §416(h) provides the crucial link: It requires reference to state intestacy law to determine child status not just for §416(h) purposes, but "for purposes of this subchapter," which includes both §§402(d) and 416(e). Having explicitly complemented §416(e) by the definitional provisions contained in §416(h), Congress had no need to place a redundant cross-reference in §416(e).

The Act commonly refers to state law on matters of family status, including an applicant's status as a wife, widow, husband, or widower. See, *e.g.,* §§416(b), (h)(1)(A). The Act also sets duration-of-relationship limitations, see *Weinberger* v. *Salfi,* 422 U. S. 749, 777–782, and time limits qualify the statutes of several States that accord inheritance rights to posthumously conceived children. In contrast, no time constraint attends the Third Circuit's ruling in this case, under which the biological child of married parents is eligible for survivors benefits, no matter the length of time between the father's death and the child's conception and birth.

Because a child who may take from a father's estate is more likely to "be dependent during the parent's life and at his death," *Mathews* v. *Lucas,* 427 U. S. 495, 514, reliance on state intestacy law to determine who is a "child" serves the Act's driving objective, which is to "provide . . . dependent members of [a wage earner's] family with protection against the hardship occasioned by [the] loss of [the insured's] earnings," *Califano* v. *Jobst,* 434 U. S. 47, 52. Although the Act and regulations set different eligibility requirements for adopted children, stepchildren, grandchildren, and stepgrandchildren, it hardly follows, as respondent argues, that applicants in those categories are treated more advantageously than are children who must meet a §416(h) criterion. Respondent charges that the SSA's construction of the Act raises serious constitutional concerns under the equal protection component of the Due Process Clause. But under rational-basis review, the appropriate standard here, the regime passed by Congress easily passes inspection. Pp. 10–15.

(c) Because the SSA's interpretation of the relevant provisions, is at least reasonable, the agency's reading is entitled to this Court's deference under *Chevron,* 467 U. S. 837. *Chevron* deference is appropriate "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States* v. *Mead Corp.,* 533 U. S. 218, 226–227. Here, the SSA's longstanding interpretation, set forth in regulations published after notice-and-comment rulemaking, is neither "arbitrary or capricious in substance, [n]or manifestly contrary

Syllabus

to the statute." *Mayo Foundation for Medical Ed. and Research* v. *United States*, 562 U. S. \_\_\_, \_\_\_. It therefore warrants the Court's approbation. Pp. 15–16.

631 F. 3d 626, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–159

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL
SECURITY, PETITIONER *v.* KAREN K. CAPATO,
ON BEHALF OF B. N. C., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[May 21, 2012]

JUSTICE GINSBURG delivered the opinion of the Court.

Karen and Robert Capato married in 1999. Robert died of cancer less than three years later. With the help of in vitro fertilization, Karen gave birth to twins 18 months after her husband's death. Karen's application for Social Security survivors benefits for the twins, which the Social Security Administration (SSA) denied, prompted this litigation. The technology that made the twins' conception and birth possible, it is safe to say, was not contemplated by Congress when the relevant provisions of the Social Security Act (Act) originated (1939) or were amended to read as they now do (1965).

Karen Capato, respondent here, relies on the Act's initial definition of "child" in 42 U. S. C. §416(e): "'[C]hild' means . . . the child or legally adopted child of an [insured] individual." Robert was an insured individual, and the twins, it is uncontested, are the biological children of Karen and Robert. That satisfies the Act's terms, and no further inquiry is in order, Karen maintains. The SSA, however, identifies subsequent provisions, §§416(h)(2) and

(h)(3)(C), as critical, and reads them to entitle biological children to benefits only if they qualify for inheritance from the decedent under state intestacy law, or satisfy one of the statutory alternatives to that requirement.

We conclude that the SSA's reading is better attuned to the statute's text and its design to benefit primarily those supported by the deceased wage earner in his or her lifetime. And even if the SSA's longstanding interpretation is not the only reasonable one, it is at least a permissible construction that garners the Court's respect under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).

I

Karen Capato married Robert Capato in May 1999. Shortly thereafter, Robert was diagnosed with esophageal cancer and was told that the chemotherapy he required might render him sterile. Because the couple wanted children, Robert, before undergoing chemotherapy, deposited his semen in a sperm bank, where it was frozen and stored. Despite Robert's aggressive treatment regime, Karen conceived naturally and gave birth to a son in August 2001. The Capatos, however, wanted their son to have a sibling.

Robert's health deteriorated in late 2001, and he died in Florida, where he and Karen then resided, in March 2002. His will, executed in Florida, named as beneficiaries the son born of his marriage to Karen and two children from a previous marriage. The will made no provision for children conceived after Robert's death, although the Capatos had told their lawyer they wanted future offspring to be placed on a par with existing children. Shortly after Robert's death, Karen began in vitro fertilization using her husband's frozen sperm. She conceived in January 2003 and gave birth to twins in September 2003, 18 months after Robert's death.

Karen Capato claimed survivors insurance benefits on behalf of the twins. The SSA denied her application, and the U. S. District Court for the District of New Jersey affirmed the agency's decision. See App. to Pet. for Cert. 33a (decision of the Administrative Law Judge); *id.,* at 15a (District Court opinion). In accord with the SSA's construction of the statute, the District Court determined that the twins would qualify for benefits only if, as §416(h)(2)(A) specifies, they could inherit from the deceased wage earner under state intestacy law. Robert Capato died domiciled in Florida, the court found. Under that State's law, the court noted, a child born posthumously may inherit through intestate succession only if conceived during the decedent's lifetime. *Id.,* at 27a–28a.[1]

The Court of Appeals for the Third Circuit reversed. Under §416(e), the appellate court concluded, "the undisputed biological children of a deceased wage earner and his widow" qualify for survivors benefits without regard to state intestacy law. 631 F. 3d 626, 631 (2011).[2] Courts of Appeals have divided on the statutory interpretation question this case presents. Compare *ibid.* and *Gillett-Netting* v. *Barnhart,* 371 F. 3d 593, 596–597 (CA9 2004) (biological but posthumously conceived child of insured wage earner and his widow qualifies for benefits), with *Beeler* v. *Astrue,* 651 F. 3d 954, 960–964 (CA8 2011), and

————————

[1] The District Court observed that Fla. Stat. Ann. §732.106 (West 2010) defines "'afterborn heirs'" as "'heirs of the decedent *conceived before his or her death*, but born thereafter.'" App. to Pet. for Cert. 27a (emphasis added by District Court). The court also referred to §742.17(4), which provides that a posthumously conceived child "'shall not be eligible for a claim against the decedent's estate unless the child has been provided for by the decedent's will.'" *Id.,* at 28a.

[2] Because the Third Circuit held that posthumously conceived children qualify for survivors benefits as a matter of federal law, it did not definitively determine "where [Robert] Capato was domiciled at his death or . . . delve into the law of intestacy of that state." 631 F. 3d, at 632, n. 6. These issues, if preserved, may be considered on remand.

*Schafer* v. *Astrue*, 641 F. 3d 49, 54–63 (CA4 2011) (post-humously conceived child's qualification for benefits de-pends on intestacy law of State in which wage earner was domiciled). To resolve the conflict, we granted the Com-missioner's petition for a writ of certiorari. 565 U. S. ___ (2011).

## II

Congress amended the Social Security Act in 1939 to provide a monthly benefit for designated surviving fam-ily members of a deceased insured wage earner. "Child's insurance benefits" are among the Act's family-protective measures. 53 Stat. 1364, as amended, 42 U. S. C. §402(d). An applicant qualifies for such benefits if she meets the Act's definition of "child," is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death. §402(d)(1).[3]

To resolve this case, we must decide whether the Capato twins rank as "child[ren]" under the Act's definitional provisions. Section 402(d) provides that "[e]very child (as defined in section 416(e) of this title)" of a deceased in-sured individual "shall be entitled to a child's insurance benefit." Section 416(e), in turn, states: "The term 'child' means (1) the child or legally adopted child of an individ-

_____

[3] Applicants not in fact dependent on the insured individual may be "deemed dependent" when the Act so provides. For example, a "legiti-mate" child, even if she is not living with or receiving support from her parent, is ordinarily "deemed dependent" on that parent. 42 U. S. C. §402(d)(3). Further, applicants "deemed" the child of an insured individual under §416(h)(2)(B) or (h)(3) are also "deemed legitimate," hence dependent, even if not living with or receiving support from the parent. §402(d)(3). See also *Mathews* v. *Lucas*, 427 U. S. 495, 499, n. 2 (1976) (deeming dependent any child who qualifies under §416(h)(2)(A)); Tr. of Oral Arg. 13–14 (counsel for the SSA stated, in response to the Court's question, that statutory presumptions of de-pendency are irrebuttable).

ual, (2) a stepchild [under certain circumstances], and (3) . . . the grandchild or stepgrandchild of an individual or his spouse [who meets certain conditions]."

The word "child," we note, appears twice in §416(e)'s opening sentence: initially in the prefatory phrase, "[t]he term 'child' means . . . ," and, immediately thereafter, in subsection (e)(1) ("child or legally adopted child"), delineating the first of three beneficiary categories. Unlike §§416(e)(2) and (3), which specify the circumstances under which stepchildren and grandchildren qualify for benefits, §416(e)(1) lacks any elaboration. Compare §416(e)(1) (referring simply to "the child . . . of an individual") with, *e.g.*, §416(e)(2) (applicant must have been a stepchild for at least nine months before the insured individual's death).

A subsequent definitional provision further addresses the term "child." Under the heading "Determination of family status," §416(h)(2)(A) provides: "In determining whether an applicant is the child or parent of [an] insured individual for purposes of this subchapter, the Commissioner of Social Security shall apply [the intestacy law of the insured individual's domiciliary State]."[4]

An applicant for child benefits who does not meet §416(h)(2)(A)'s intestacy-law criterion may nonetheless qualify for benefits under one of several other criteria the Act prescribes. First, an applicant who "is a son or daughter" of an insured individual, but is not determined to be a "child" under the intestacy-law provision, nevertheless

---

[4] Section 416(h)(2)(A) also states that persons who, under the law of the insured's domicile, "would have the same status relative to taking intestate personal property as a child or parent shall be deemed such." Asked about this prescription, counsel for the SSA responded that it would apply to equitably adopted children. Tr. of Oral Arg. 8–9, 54; see 20 CFR §404.359 (2011) (an equitably adopted child may be eligible for benefits if the agreement to adopt the child would be recognized under state law as enabling the child to inherit upon the intestate death of the adopting parent).

ranks as a "child" if the insured and the other parent went
through a marriage ceremony that would have been valid
but for certain legal impediments. §416(h)(2)(B). Further,
an applicant is deemed a "child" if, before death, the in-
sured acknowledged in writing that the applicant is his or
her son or daughter, or if the insured had been decreed by
a court to be the father or mother of the applicant, or had
been ordered to pay child support. §416(h)(3)(C)(i). In
addition, an applicant may gain "child" status upon
proof that the insured individual was the applicant's pa-
rent and "was living with or contributing to the support
of the applicant" when the insured individual died.
§416(h)(3)(C)(ii).[5]

The SSA has interpreted these provisions in regulations
adopted through notice-and-comment rulemaking. The
regulations state that an applicant may be entitled to
benefits "as a natural child, legally adopted child, step-
child, grandchild, stepgrandchild, or equitably adopted
child." 20 CFR §404.354. Defining "[w]ho is the insured's
natural child," §404.355, the regulations closely track
42 U. S. C. §§416(h)(2) and (h)(3). They state that an
applicant may qualify for insurance benefits as a "natural
child" by meeting any of four conditions: (1) the applicant
"could inherit the insured's personal property as his or her
natural child under State inheritance laws"; (2) the appli-
cant is "the insured's natural child and [his or her parents]
went through a ceremony which would have resulted in
a valid marriage between them except for a legal impedi-
ment"; (3) before death, the insured acknowledged in
writing his or her parentage of the applicant, was decreed
by a court to be the applicant's parent, or was ordered by a
court to contribute to the applicant's support; or (4) other
evidence shows that the insured is the applicant's "natural

————————

[5] Respondent does not invoke any of the alternative criteria as a basis
for the twins' "child" status.

father or mother" and was either living with, or contributing to the support of, the applicant. 20 CFR §404.355(a) (internal quotation marks omitted).

As the SSA reads the statute, 42 U. S. C. §416(h) governs the meaning of "child" in §416(e)(1). In other words, §416(h) is a gateway through which all applicants for insurance benefits as a "child" must pass. See *Beeler*, 651 F. 3d, at 960 ("The regulations make clear that the SSA interprets the Act to mean that the provisions of §416(h) are the exclusive means by which an applicant can establish 'child' status under §416(e) as a natural child.").[6]

## III

Karen Capato argues, and the Third Circuit held, that §416(h), far from supplying the governing law, is irrelevant in this case. Instead, the Court of Appeals determined, §416(e) alone is dispositive of the controversy. 631 F. 3d, at 630–631. Under §416(e), "child" means "child of an [insured] individual," and the Capato twins, the Third Circuit observed, clearly fit that definition: They are undeniably the children of Robert Capato, the insured wage earner, and his widow, Karen Capato. Section 416(h) comes into play, the court reasoned, only when "a claimant's status as a deceased wage-earner's child is in doubt." *Id.*, at 631. That limitation, the court suggested, is evident from §416(h)'s caption: "Determination of family status." Here, "there is no family status to determine," the court said, *id.*, at 630, so §416(h) has no role to play.

In short, while the SSA regards §416(h) as completing §416(e)'s sparse definition of "child," the Third Circuit considered each subsection to control different situations: §416(h) governs when a child's family status needs to be determined; §416(e), when it does not. When is there no

_____

[6] The Commissioner of Social Security has acquiesced in the Ninth Circuit's conflicting interpretation for cases arising in that Circuit. See Social Security Acquiescence Ruling 05–1(9), 70 Fed. Reg. 55656 (2005).

need to determine a child's family status?   The answer
that the Third Circuit found plain: whenever the claimant
is "the biological child of a married couple."  *Id.,* at 630.[7]

We point out, first, some conspicuous flaws in the Third
Circuit's and respondent Karen Capato's reading of the
Act's provisions, and then explain why we find the SSA's
interpretation persuasive.

### A

Nothing in §416(e)'s tautological definition ("'child'
means . . . the child . . . of an individual") suggests that
Congress understood the word "child" to refer only to the
children of married parents.   The dictionary definitions
offered by respondent are not so confined.  See Webster's
New International Dictionary 465 (2d ed. 1934) (defining
"child" as, *inter alia,* "[i]n *Law*, legitimate offspring; also,
sometimes, esp. in wills, an adopted child, or an illegiti-
mate offspring, or any direct descendant, as a grandchild,
as the intention may appear"); Merriam-Webster's Colle-
giate Dictionary 214 (11th ed. 2003) ("child" means "son or
daughter," or "descendant").  See also Restatement (Third)
of Property §2.5(1) (1998) ("[a]n individual is the child of
his or her genetic parents," and that may be so "whether
or not [the parents] are married to each other").   More-
over, elsewhere in the Act, Congress expressly limited
the category of children covered to offspring of a marital
union.  See §402(d)(3)(A) (referring to the "legitimate . . .
child" of an individual).   Other contemporaneous statutes
similarly differentiate child of a marriage ("legitimate
child") from the unmodified term "child."   See, *e.g.*, Ser-
vicemen's Dependents Allowance Act of 1942, ch. 443,

_____

[7] Because the Court of Appeals found the statutory language unam-
biguous, it had no occasion to "determine whether the [SSA's] interpre-
tation is a permissible construction of the statute."   631 F. 3d, at 631,
n. 5 (citing *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council,
Inc.*, 467 U. S. 837, 842–843 (1984)).

§120, 56 Stat. 385 (defining "child" to include "legitimate child," "child legally adopted," and, under certain conditions, "stepchild" and "illegitimate child" (internal quotation marks omitted)).

Nor does §416(e) indicate that Congress intended "biological" parentage to be prerequisite to "child" status under that provision. As the SSA points out, "[i]n 1939, there was no such thing as a scientifically proven biological relationship between a child and a father, which is . . . part of the reason that the word 'biological' appears nowhere in the Act." Reply Brief 6. Notably, a biological parent is not necessarily a child's parent under law. Ordinarily, "a parent-child relationship does not exist between an adoptee and the adoptee's genetic parents." Uniform Probate Code §2–119(a), 8 U. L. A. 55 (Supp. 2011) (amended 2008). Moreover, laws directly addressing use of today's assisted reproduction technology do not make biological parentage a universally determinative criterion. See, *e.g.*, Cal. Fam. Code Ann. §7613(b) (West Supp. 2012) ("The donor of semen . . . for use in artificial insemination or in vitro fertilization of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived, unless otherwise agreed to in a writing signed by the donor and the woman prior to the conception of the child."); Mass. Gen. Laws, ch. 46, §4B (West 2010) ("Any child born to a married woman as a result of artificial insemination with the consent of her husband, shall be considered the legitimate child of the mother and such husband.").

We note, in addition, that marriage does not ever and always make the parentage of a child certain, nor does the absence of marriage necessarily mean that a child's parentage is uncertain. An unmarried couple can agree that a child is theirs, while the parentage of a child born during a marriage may be uncertain. See Reply Brief 11 ("Respondent errs in treating 'marital' and 'undisputed' as

having the same meaning.").

Finally, it is far from obvious that Karen Capato's proposed definition—"biological child of married parents," see Brief for Respondent 9—would cover the posthumously conceived Capato twins. Under Florida law, a marriage ends upon the death of a spouse. See *Price* v. *Price*, 114 Fla. 233, 235, 153 So. 904, 905 (1934). If that law applies, rather than a court-declared preemptive federal law, the Capato twins, conceived *after* the death of their father, would not qualify as "marital" children.[8]

## B

Resisting the importation of words not found in §416(e)—"child" means "the biological child of married parents," Brief for Respondent 9—the SSA finds a key textual cue in §416(h)(2)(A)'s opening instruction: "In determining whether an applicant is the child . . . of [an] insured individual *for purposes of this subchapter*," the Commissioner shall apply state intestacy law. (Emphasis added.) Respondent notes the absence of any cross-reference in §416(e) to §416(h). Brief for Respondent 18. She overlooks, however, that §416(h) provides the crucial link. The "subchapter" to which §416(h) refers is Subchapter II of the Act, which spans §§401 through 434. Section 416(h)'s reference to "this subchapter" thus includes both §§402(d) and 416(e). Having explicitly complemented §416(e) by the definitional provisions contained in §416(h), Congress had no need to place a redundant cross-reference in §416(e). See *Schafer*, 641 F. 3d, at 54

---

[8] Respondent urges that it would be bizarre to deny benefits to the Capato twins when, under §416(h)(2)(B), they would have gained benefits had their parents gone through a marriage ceremony that would have been valid save for a legal impediment. Brief for Respondent 26, n. 10; see *supra,* at 5–6. Whether the Capatos' marriage ceremony was flawed or flawless, the SSA counters, no marital union was extant when the twins were conceived. Reply Brief 11.

(Congress, in §416(h)(2)(A), provided "plain and explicit instruction on how the determination of child status should be made"; on this point, the statute's text "could hardly be more clear.").

The original version of today's §416(h) was similarly drafted. It provided that, "[i]n determining whether an applicant is the . . . child . . . of [an] insured individual *for purposes of sections 401–409* of this title, the Board shall apply [state intestacy law]." 42 U. S. C. §409(m) (1940 ed.) (emphasis added). Sections 401–409 embraced §§402(c) and 409(k), the statutory predecessors of 42 U. S. C. §§402(d) and 416(e) (2006 ed.), respectively.

Reference to state law to determine an applicant's status as a "child" is anything but anomalous. Quite the opposite. The Act commonly refers to state law on matters of family status. For example, the Act initially defines "wife" as "the wife of an [insured] individual," if certain conditions are satisfied. §416(b). Like §416(e), §416(b) is, at least in part, tautological ("'wife' means the [insured's] wife"). One must read on, although there is no express cross-reference, to §416(h) (rules on "[d]etermination of family status") to complete the definition. Section §416(h)(1)(A) directs that, "*for purposes of this subchapter*," the law of the insured's domicile determines whether "[the] applicant and [the] insured individual were validly married," and if they were not, whether the applicant would nevertheless have "the same status" as a wife under the State's intestacy law. (Emphasis added.) The Act similarly defines the terms "widow," "husband," and "widower." See §§416(c), (f), (g), (h)(1)(A).

Indeed, as originally enacted, a single provision mandated the use of state intestacy law for "determining whether an applicant is the wife, widow, child, or parent of [an] insured individual." 42 U. S. C. §409(m) (1940 ed.). All wife, widow, child, and parent applicants thus had to satisfy the same criterion. To be sure, children born dur-

ing their parents' marriage would have readily qualified under the 1939 formulation because of their eligibility to inherit under state law. But requiring all "child" applicants to qualify under state intestacy law installed a simple test, one that ensured benefits for persons plainly within the legislators' contemplation, while avoiding congressional entanglement in the traditional state-law realm of family relations.

Just as the Act generally refers to state law to determine whether an applicant qualifies as a wife, widow, husband, widower, 42 U. S. C. §416(h)(1) (2006 ed.), child or parent, §416(h)(2)(A), so in several sections (§§416(b), (c), (e)(2), (f), (g)), the Act sets duration-of-relationship limitations. See *Weinberger* v. *Salfi*, 422 U. S. 749, 777–782 (1975) (discussing §416(e)(2)'s requirement that, as a check against deathbed marriages, a parent-stepchild relationship must exist "not less than nine months immediately preceding [insured's death]"). Time limits also qualify the statutes of several States that accord inheritance rights to posthumously conceived children. See Cal. Prob. Code Ann. §249.5(c) (West Supp. 2012) (allowing inheritance if child is in utero within two years of parent's death); Colo. Rev. Stat. Ann. §15–11–120(11) (2011) (child in utero within three years or born within 45 months); Iowa Code Ann. §633.220A(1) (West Supp. 2012) (child born within two years); La. Rev. Stat. Ann. §9:391.1(A) (West 2008) (child born within three years); N. D. Cent. Code Ann. §30.1–04–19(11) (Lexis 2001) (child in utero within three years or born within 45 months). See also Uniform Probate Code §2–120(k), 8 U. L. A. 58 (Supp. 2011) (treating a posthumously conceived child as "in gestation at the individual's death," but only if specified time limits are met). No time constraints attend the Third Circuit's ruling in this case, under which the biological child of married parents is eligible for survivors benefits, no matter the length of time between the father's death

and the child's conception and birth. See Tr. of Oral Arg. 36–37 (counsel for Karen Capato acknowledged that, under the preemptive federal rule he advocated, and the Third Circuit adopted, a child born four years after her father's death would be eligible for benefits).

The paths to receipt of benefits laid out in the Act and regulations, we must not forget, proceed from Congress' perception of the core purpose of the legislation. The aim was not to create a program "generally benefiting needy persons"; it was, more particularly, to "provide . . . dependent members of [a wage earner's] family with protection against the hardship occasioned by [the] loss of [the insured's] earnings." *Califano* v. *Jobst*, 434 U. S. 47, 52 (1977). We have recognized that "where state intestacy law provides that a child may take personal property from a father's estate, it may reasonably be thought that the child will more likely be dependent during the parent's life and at his death." *Mathews* v. *Lucas*, 427 U. S. 495, 514 (1976). Reliance on state intestacy law to determine who is a "child" thus serves the Act's driving objective. True, the intestacy criterion yields benefits to some children outside the Act's central concern. Intestacy laws in a number of States, as just noted, do provide for inheritance by posthumously conceived children, see *supra*, at 12,[9] and under federal law, a child conceived shortly before her father's death may be eligible for benefits even though she never actually received her father's support. It was nonetheless Congress' prerogative to legislate for the generality of cases. It did so here by employing eligibility to inherit

--------

[9] But see N. Y. Est., Powers & Trusts Law Ann. §4–1.1(c) (West 1998) ("Distributees of the decedent, conceived before his or her death but born alive thereafter, take as if they were born in his or her lifetime."). Similar provisions are contained in Ga. Code Ann. §53–2–1(b)(1) (2011), Idaho Code §15–2–108 (Lexis 2009), Minn. Stat. Ann. §524.2–120(10) (West Supp. 2012), S. C. Code Ann. §62–2–108 (2009), and S. D. Codified Laws §29A–2–108 (Supp. 2011).

under state intestacy law as a workable substitute for bur-densome case-by-case determinations whether the child was, in fact, dependent on her father's earnings.

Respondent argues that on the SSA's reading, natural children alone must pass through a §416(h) gateway. Adopted children, stepchildren, grandchildren, and step-grandchildren, it is true, are defined in §416(e), and are not further defined in §416(h). Respondent overlooks, however, that although not touched by §416(h), beneficiaries described in §§416(e)(2) and (e)(3) must meet *other* statutorily prescribed criteria. In short, the Act and regulations set *different* eligibility requirements for adopted children, stepchildren, grandchildren, and stepgrandchildren, see 20 CFR §§404.356–404.358, but it hardly follows that applicants in those categories are treated more advantageously than are children who must meet a §416(h) criterion.

The SSA's construction of the Act, respondent charges, raises serious constitutional concerns under the equal protection component of the Due Process Clause. Brief for Respondent 42; see *Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 638, n. 2 (1975). She alleges: "Under the government's interpretation . . . , posthumously conceived children are treated as an inferior subset of natural children who are ineligible for government benefits simply because of their date of birth and method of conception." Brief for Respondent 42–43.

Even the Courts of Appeals that have accepted the reading of the Act respondent advances have rejected this argument. See 631 F. 3d, at 628, n. 1 (citing *Vernoff* v. *Astrue*, 568 F. 3d 1102, 1112 (CA9 2009)). We have applied an intermediate level of scrutiny to laws "burden[ing] illegitimate children for the sake of punishing the illicit relations of their parents, because 'visiting this condemnation on the head of an infant is illogical and unjust.'" *Clark* v. *Jeter*, 486 U. S. 456, 461 (1988) (quoting

*Weber* v. *Aetna Casualty & Surety Co.*, 406 U. S. 164, 175 (1972)). No showing has been made that posthumously conceived children share the characteristics that prompted our skepticism of classifications disadvantaging children of unwed parents. We therefore need not decide whether heightened scrutiny would be appropriate were that the case.[10] Under rational-basis review, the regime Congress adopted easily passes inspection. As the Ninth Circuit held, that regime is "reasonably related to the government's twin interests in [reserving] benefits [for] those children who have lost a parent's support, and in using reasonable presumptions to minimize the administrative burden of proving dependency on a case-by-case basis." *Vernoff*, 568 F. 3d, at 1112 (citing *Mathews*, 427 U. S., at 509).

## IV

As we have explained, §416(e)(1)'s statement, "[t]he term 'child' means . . . the child . . . of an individual," is a definition of scant utility without aid from neighboring provisions. See *Schafer*, 641 F. 3d, at 54. That aid is supplied by §416(h)(2)(A), which completes the definition of "child" "for purposes of th[e] subchapter" that includes §416(e)(1). Under the completed definition, which the SSA employs, §416(h)(2)(A) refers to state law to determine the status of a posthumously conceived child. The SSA's interpretation of the relevant provisions, adhered to without deviation for many decades, is at least reasonable; the agency's reading is therefore entitled to this Court's defer-

———————

[10] Ironically, while drawing an analogy to the "illogical and unjust" discrimination children born out of wedlock encounter, see *Weber* v. *Aetna Casualty & Surety Co.*, 406 U. S. 164, 175–176 (1972), respondent asks us to differentiate between children whose parents were married and children whose parents' liaisons were not blessed by clergy or the State. She would eliminate the intestacy test only for biological children of *married parents*.

ence under *Chevron*, 467 U. S. 837.

*Chevron* deference is appropriate "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States* v. *Mead Corp.*, 533 U. S. 218, 226–227 (2001). Here, as already noted, the SSA's longstanding interpretation is set forth in regulations published after notice-and-comment rulemaking. See *supra,* at 6–7. Congress gave the Commissioner authority to promulgate rules "necessary or appropriate to carry out" the Commissioner's functions and the relevant statutory provisions. See 42 U. S. C. §§405(a), 902(a)(5). The Commissioner's regulations are neither "arbitrary or capricious in substance, [n]or manifestly contrary to the statute." *Mayo Foundation for Medical Ed. and Research* v. *United States*, 562 U. S. ___, ___ (2011) (slip op., at 7) (internal quotation marks omitted). They thus warrant the Court's approbation. See *Barnhart* v. *Walton*, 535 U. S. 212, 217–222, 225 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Social Security Act).

## V

Tragic circumstances—Robert Capato's death before he and his wife could raise a family—gave rise to this case. But the law Congress enacted calls for resolution of Karen Capato's application for child's insurance benefits by reference to state intestacy law. We cannot replace that reference by creating a uniform federal rule the statute's text scarcely supports.

\*    \*    \*

For the reasons stated, the judgment of the Court of Appeals for the Third Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*