NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2027
_____

KAREN K. CAPATO, o/b/o
B.N.C., K.N.C.,

Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the District of New Jersey
District Judge:  Honorable Dennis M. Cavanaugh
Case No. 2-08-cv-05405

Argued July 1, 2013

_____

Before:  CHAGARES, VANASKIE, and BARRY Circuit Judges.

(Filed: July 24, 2013)

_____

OPINION
_____

Paul W. Hughes, Esq. [Argued]
Mayer Brown
1999 K Street, N.W.
Washington, DC 20006

Charles A. Rothfield, Esq.
Mayer Brown
1999 K Street, N.W.
Washington, DC 20006

Bernard A. Kuttner, Esq.
Kuttner Law Offices
24 Lackawanna Plaza
Millburn, NJ 07041

Counsel for Appellant

Helen L. Gilbert, Esq. [Argued]
United States Department of Justice
Appellate Section
Room 7261
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Christopher J. Brackett, Esq.
Social Security Administration
Office of General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA 98104

Rebecca H. Estelle, Esq.
Social Security Administration
Office of General Counsel - Region II
Room 3904
26 Federal Plaza
New York, NY 10278

Ellen E. Sovern, Esq.
Social Security Administration
Office of General Counsel - Region II
Room 3904
26 Federal Plaza
New York, NY 10278


Michael S. Raab, Esq.
United States Department of Justice
Civil Division
Room 7237
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

        Counsel for Appellee

_____

OPINION
_____

CHAGARES, Circuit Judge.

In 2010, Karen Capato filed an appeal challenging the District Court's decision affirming the denial of social security benefits to her twin children (the "twins") following the death of her husband, Robert Nicholas Capato ("Nick"). We vacated the District Court's determination in part, but the Supreme Court reversed our decision and remanded the case for further review. We will now affirm the District Court's decision.

I.

The factual and procedural history of this case was recounted in detail by the Supreme Court in its recent opinion remanding this case to our Court. See Astrue v. Capato ex rel. B.N.C., 132 S. Ct. 2021, 2025-27 (2012). The Supreme Court instructed that "the law Congress enacted calls for resolution of Karen Capato's application for [the

twins'] insurance benefits by reference to state intestacy law."[1] Id. at 2034. Thus, we will address two questions. First, we must determine which state's law to apply. Second, we must decide whether that state's intestacy law would allow the twins to receive benefits.

## II.[2]

### A.

To determine which state's law applies, we ask where Nick was domiciled at the time of his death. The Government argues that the administrative law judge ("ALJ") and District Court were correct to conclude that Nick was domiciled in Florida, where he lived for about three years immediately preceding his death. Capato argues that Nick was domiciled in Washington, the state where he was born and lived the majority of his life. Our decision turns on whether the ALJ's decision was "supported by substantial evidence." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

"[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011). Intent to remain must be analyzed at the time of arrival in a new place: if a person is shown to have doubts about remaining in a new location after his arrival, those doubts are not relevant unless they indicate there

---

[1] Under the law, a person is entitled to benefits if he or she is a "child" as defined by 42 U.S.C. § 416(e). See 42 U.S.C. § 402(d)(1).
[2] We have jurisdiction pursuant to 28 U.S.C. § 1291, and the District Court was granted jurisdiction by 42 U.S.C. 405(g).

was never an original intent to stay. Gallagher v. Philadelphia Transp. Co., 185 F.2d 543, 546 (3d Cir. 1950).

There was sufficient evidence for the ALJ to conclude Nick was domiciled in Florida. Nick's business interests in Florida and the fact that his will was written under Florida law provide some indication of his intent, and his actual residence in Florida was prima facie evidence that Florida was his domicile. See Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972). And while all the testimony concerning the Capatos' intent to move to New Jersey was credited, the ALJ was free to decide that that evidence did not establish that Nick had a definite plan to leave Florida at the time he arrived from Colorado.

## B.

Because Nick was domiciled in Florida at the time of his death, we must "apply such law as would be applied in determining the devolution of intestate personal property by the courts of" Florida. 42 U.S.C. § 416(h)(2)(A). Under Florida intestacy law, "[a] child conceived from the eggs or sperm of a person or persons who died before the transfer of their eggs, sperm, or preembryos to a woman's body shall not be eligible for a claim against the decedent's estate unless the child has been provided for by the decedent's will." Fla. Stat. Ann. § 742.17(4). Capato's arguments to the contrary notwithstanding, § 742.17(4) clearly prevents recovery for the twins.

## III.

For these reasons, we will affirm the District Court's conclusion that the twins are not entitled to benefits under the Social Security Act.

VANASKIE, *Circuit Judge*, concurring.

The results we reach in this case – that there is substantial evidence supporting the determination that Nick Capato was domiciled in Florida at the time of his passing, and that, as a consequence of this determination, the children of Nick and Karen Capato conceived after his passing are not entitled to Social Security survivor's benefits  – are correct legally, and so I must concur.   But the denial of survivor's benefits to Nick and Karen Capato's twins strikes me as grossly unfair.

The manifest unfairness of this case is the unfortunate consequence of legislation that was enacted generations before scientific and technological advances made it possible for couples like the Capatos to provide for a family even in the tragic circumstance of a death-sentence diagnosis of the wage earner.  In 1939, when Congress first enacted legislation to provide for survivor benefits to the children of a wage earner, Congress was compelled to address the issue of who in fact was a child of the deceased wage earner for children born outside of wedlock when paternity and parentage status was not ascertainable with certainty.  This concern for providing survivor benefits to children conceived and born outside a traditional marriage remained the focus of congressional attention in the 1960s, when section 216(h) of the Social Security Act, 42 U.S.C. § 416(h), was last amended by "extending benefits to the children of unwed parents." *Schafer v. Astrue,* 641 F.3d 49, 67 (4th Cir. 2011) (Davis, J., dissenting).  As explained in *McMillian ex rel. McMillian v. Heckler*, 759 F.2d 1147 (4th Cir. 1985):

> Until 1965, § 416(h)(2) provided the sole means by which illegitimates
> could establish entitlement to benefits as dependent children, with §

1

(h)(2)(A) the primary vehicle. Under that provision, an illegitimate claimant could establish entitlement to benefits by proving his entitlement to inherit from the insured wage earner as a "child" under the intestate succession law of the state of the insured's domicile. In 1965, § (h)(3)(C) was added specifically to provide other means by which entitlement might be established.

Under the state inheritance law provisions of § 416(h)(2)(A), a claimant born in wedlock who sought to establish entitlement to benefits as the illegitimate child of another than his mother's husband was and is perforce confronted with any presumption of in-wedlock parentage integral to the state's inheritance law. That element of state law is necessarily included in the general congressional incorporation of state inheritance law into § 416(h)(2)(A).

But when § 416(h)(3)(C) was added in 1965 to provide supplementary and alternative means of proving entitlement by illegitimates, it did not expressly or by implication incorporate any element of state law respecting parentage, inheritance rights or any other matter of possible relevance to dependent child status. So far as the text of § 416(h)(3)(C) is concerned, all questions of its interpretation and application are referable solely to federal law.

*Id.* at 1152 (citations omitted).

Thus, the combination of sections 416(h)(2) and (h)(3)(C) assure that any child of a deceased wage earner born outside a traditional marriage while the wage earner is living has an opportunity, under a nationwide system, to receive benefits that are intended to "replace the support that the child would have received from [the deceased parent] had the [parent] not died." *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 514 (7th Cir. 1996). Such children are entitled to survivor benefits either if they qualify as heirs of the deceased parent under the intestate laws of the state where the parent was domiciled at the time of his or her death, *see* 42 U.S.C. § 416(h)(2)(A), or, if not so qualified, by satisfying one of several nationally-applicable criteria. *See id.* § 416(h)(3)(C).

2

Children conceived after the death of a parent, a consequence of scientific advances "not within the imagination, much less contemplation, of Congress when the relevant [legislative provisions] came to be," *Capato ex rel. B.N.C. v. Comm'r of Social Security*, 631 F.3d 626, 627 (3d Cir. 2011), *rev'd*, 132 S. Ct. 2021 (2012), however, are relegated to the intestacy laws of the several states. Unlike "out-of-wedlock" children born before the death of the deceased wage earner, "after-conceived" children have no alternative way to establish entitlement to survivor benefits. This means that some after-conceived children will receive survivor benefits because their parents were domiciled in states that recognize after-conceived children as heirs of their parents under their intestate laws, while others will be denied benefits solely because the intestate laws of the state where the wage earner passed away did not recognize his or her after-conceived children as heirs. And so we have a nationwide benefits program in which some after-conceived children of wage earners are treated as the children of their biological parents, while other after-conceived children are not regarded as the children of their biological parents. This strikes me as manifestly unfair.

Nick Capato was a fully-insured individual in a nationwide system that provides benefits to the children of fully-insured individuals. His offspring, whether conceived before or after his passing, should be entitled to the same treatment for survivor benefits that every other child born in the United States receives. There is no dispute that Nick Capato desired to provide for a family notwithstanding being stricken by a fatal disease. As it turned out, he was living in the wrong state when he died to assure that his after-

conceived children would receive the benefits of a national program into which he paid his fair share.

Where, as here, the record is clear as to the relationship between the claimant and the wage earner, eligibility for benefits in a nationwide program should not turn on the vagaries of the laws enacted by state legislators to address the completely separate matter of intestacy rights. Only Congress has the authority to remedy this situation. In 1965, Congress took action to remedy the inequity of relegating entitlement to survivor benefits to state intestacy laws by providing alternative means to qualify for such benefits. I write separately in this case to urge that Congress take appropriate action now to correct the injustice resulting from application of legislative provisions that could not have contemplated this "new world" in which a father or mother may provide for a family even after his or her death. Until Congress does so, courts will be constrained to sustain manifestly unfair results that deny survivor benefits based solely upon the domicile of the wage earner.