**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHANIE DELZER, on her own and on behalf of her minor children C.O.D.1 and C.O.D.2; C.O.D.1; C.O.D.2, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> NANCY A. BERRYHILL, Commissioner of Social Security, in her official capacity, and her employees, agents and successors in office, <br> *Defendant-Appellee*. | No.16-56203 <br><br> D.C. No. 8:12-cv-00094-GW-MRW <br><br><br> ORDER CERTIFYING QUESTION TO CALIFORNIA SUPREME COURT |

Filed March 21, 2018

Before: Consuelo M. Callahan, Carlos T. Bea,
and Paul J. Kelly, Jr.* Circuit Judges.

---

\* The Honorable Paul J. Kelly, Jr., Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

**Certified Question to California Supreme Court**

The panel certified the following questions of state law to the California Supreme Court:

> California Probate Code § 249.5 provides that, for probate purposes, "a child of the decedent conceived and born after the death of the decedent shall be deemed to have been born in the lifetime of the decedent if the child or his or her representative proves by clear and convincing evidence that," *inter alia*, "[t]he decedent, in writing, specifies that his or her genetic material shall be used for the posthumous conception of a child of the decedent." Cal. Prob. Code § 249.5(a). Does a writing that specifies that *some* genetic material of the decedent shall be so used satisfy § 249.5(a), regardless whether the genetic material specified in the putative writing includes the genetic material actually used to conceive the claimant child? Or must the genetic material identified in the putative writing include the genetic material actually used to conceive the claimant child?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

We respectfully ask the California Supreme Court to answer the certified question set forth below. The answer to this question will determine the outcome of this appeal, and there is no controlling precedent in the decisions of the California Supreme Court. Although we are mindful that our certification request adds to the substantial caseload of the California Supreme Court, this case raises an important question of California law which has important implications for Social Security claims, such as the one at issue here, as well as intestacy claims in California. Californians need to know how to make effective their wishes as to these supremely sensitive and important decisions. For these reasons, "considerations of comity and federalism suggest that the court of last resort in California, rather than our court, should have the opportunity to answer the question[] in the first instance." *Mendoza v. Nordstrom, Inc.*, 778 F.3d 834, 836 (9th Cir. 2015), *certified question answered*, 2 Cal. 5th 1074 (Cal. 2017).

**QUESTION CERTIFIED**

Pursuant to Rule 8.548 of the California Rules of Court, we respectfully request that the Supreme Court of California answer the following question:

> California Probate Code § 249.5 provides that, for probate purposes, "a child of the decedent conceived and born after the death of the decedent shall be deemed to have been born in the lifetime of the decedent if the child or his or her representative proves by clear and convincing evidence that," *inter alia*, "[t]he decedent, in writing, specifies that his or her genetic material shall be used for

the posthumous conception of a child of the decedent." Cal. Prob. Code § 249.5(a). Does a writing that specifies that *some* genetic material of the decedent shall be so used satisfy § 249.5(a), regardless whether the genetic material specified in the putative writing includes the genetic material actually used to conceive the claimant child? Or must the genetic material identified in the putative writing include the genetic material actually used to conceive the claimant child?

In response to this question, the California Supreme Court shall not be bound by the manner in which the question has been phrased by this court. Nor shall our formulation of the question restrict the California Supreme Court's consideration of the issues involved. Cal. R. Ct. 8.548(f)(5). We agree to follow the decision of the California Supreme Court. Cal. R. Ct. 8.548(b)(2).

### ADMINISTRATIVE INFORMATION

We provide the following information in accordance with California Rule of Court 8.548(b)(1). The caption for this case is:

STEPHANIE DELZER, on her own and on behalf of her minor children C.O.D.1 and C.O.D.2; C.O.D.1; C.O.D.2, Plaintiffs-Appellants,

v.

NANCY A. BERRYHILL, Commissioner of Social Security, in her official capacity, and

her employees, agents and successors in office, Defendant-Appellee.

The names and addresses of counsel are:

For Plaintiffs-Appellants, Hagit Muriel Elul, Esq. and Fara Tabatabai, Hughes Hubbard & Reed LLP, 17th Floor, One Battery Park Plaza, New York, NY 10004-1482.

For Defendant-Appellee, Margaret Branick-Abilla, Esq., Social Security Administration, Office of the General Counsel, 160 Spear Street, San Francisco, CA 94105; Jessica O. Cheh, Assistant U.S. Attorney, USLA - Office of the U.S. Attorney, 300 North Los Angeles Street, Los Angeles, CA 90012.

As required by Rule 8.548(b)(1), we designate Stephanie Delzer and her claimant children, C.O.D.1 and C.O.D.2, as the petitioners, if our request for certification is granted. They are the appellants before our court.

## BACKGROUND

Owen Delzer ("Mr. Delzer") and Stephanie Delzer, *née* Tanaka ("Ms. Delzer") married in 1997. The couple was unable to conceive a child by natural means; the couple began fertility treatment involving in-vitro fertilization ("IVF") in October 1998.

On October 8, 1998, the Delzers executed a Patient Information and Informed Consent Form ("Informed Consent Form") consenting to "In Vitro Fertilization and Embryo Transfer." The Informed Consent Form described a standard Assisted Reproductive Technology ("ART")

procedure, explained the risks of a standard ART procedure, noted available alternatives to undergoing ART procedures, and provided that the Delzers consented to undergoing ART procedures and permitted their physician to perform "any or as many of the procedures described above as they, in their professional judgment, believe are indicated." The Informed Consent Form also asked the Delzers to decide what to do with any embryos that were not immediately transferred to Ms. Delzer.[1] It provided that the Delzer's options included (1) cryopreservation[2] for their own future use, (2) donation to another couple, or (3) disposition "in an ethical and legal manner." In an addendum to the Informed Consent Form ("Addendum"), the Delzers indicated that they wished for the fertility care clinic to inseminate all harvested oocytes, transfer up to five embryos to Ms. Delzer, and "cryopreserve" (freeze) any remaining embryos "for future transfer."

Because they elected to cryopreserve any surplus embryos, the Delzers also executed a "Human Embryo Cryopreservation Information and Informed Consent Form ("Cryopreservation Form"). Like the general Informed

---

[1] The form explains that "[t]he decision of how many embryos to transfer back [after fertilization] is an important one" because "[t]ransferring more embryos back increases the risk of multiple gestation," meaning twins, triplets, or higher order pregnancies, but "[t]ransferring fewer embryos back decreases the chance of pregnancy."

[2] "Cryopreservation" is the "preservation (as of cells) by subjection to extremely low temperatures," *i.e.* freezing. CRYOPRESERVATION, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/cryopreservation.

Consent Form, it advised the Delzers of the risks[3] and benefits of cryopreserving the embryos. The form explained that the Delzers were "the owners of the frozen embryos in joint custody and must make all decisions regarding the disposition of the embryos. It also asked the Delzers to indicate what should be done with any cryopreserved embryos in the following instances:

> 1. In the event of the death of both of us.
>
> 2. One year after failure to pay storage fees.
>
> 3. If the marriage ends in divorce.
>
> 4. If both of us fail to maintain contact with the program for a period greater than 1 year.

On the form, the Delzers stated that they were "declaring [their] intention to continue using these embryos" but that they requested the clinic to "[d]iscard the embryos in a professional, moral, legal and ethical manner" in any of the four enumerated circumstances. The form provided that the Delzers could change this decision "by revising this consent in writing."

About two weeks after executing these consent forms, Mr. Delzer deposited sperm at a fertility clinic to be used in the IVF procedure. Two vials of extra sperm were cryopreserved as "back-up" in the event the initial rounds of IVF failed. The IVF procedure produced embryos, including surplus embryos which were cryopreserved. Between

---

[3] Presciently, the form warned that "[t]here are many unresolved and potentially unencountered legal situations involving cryopreserved embryos which have not be [sic] clearly regulated by existing laws."

October 1998 and March 1999, the couple attempted several cycles of IVF, without success.

In April 1999, Mr. Delzer was diagnosed with terminal cancer. He died on July 20, 1999, just four months later. On February 16, 2001, Mr. Delzer's cryopreserved sperm was used to fertilize eggs from Ms. Delzer. These resulting embryos, rather than any embryos which existed at the time of Mr. Delzer's death, were transferred to Ms. Delzer on February 19, 2001, and resulted in the twin pregnancy and birth of Ms. Delzer's two children, C.O.D.1 and C.O.D.2.

In February 2002, Ms. Delzer filed applications on behalf of C.O.D.1 and C.O.D.2 for child's insurance benefits[4] based on the wage earnings of their deceased father, Mr. Delzer. The Social Security Administration ("Administration") denied her claim on March 2, 2002. The Administration reconsidered her claims and again denied them on May 27, 2008.[5] On July 22, 2008, Ms. Delzer timely requested a hearing before an Administrative Law Judge ("ALJ"). On February 1, 2010, the ALJ rendered decisions in each of the Delzer children's cases. The ALJ held that the Delzer children could not satisfy § 249.5 because they failed to submit any "paper that is signed and dated prior to the decedent's death that he consented to the

---

[4] The Social Security Act provides for financial benefits for a child who was dependent upon an individual wage-earner entitled to benefits under the statute at the time of that individual wage-earner's death. 42 U.S.C. § 402(d).

[5] In the reconsideration decision, the Administration apologized for the "long delay" in processing Ms. Delzer's requests for reconsideration, but did not offer any explanation for the six-year delay.

use of his frozen sperm after his death." While the ALJ noted that the Informed Consent Form and Cryopreservation Form "authoriz[ed] the use of the [Delzers'] frozen embryos after their death," he found that those forms were "only for the continued use of the embryos[,] not the deceased's frozen sperm."

On January 19, 2012, Ms. Delzer filed an action in the U.S. District Court for the Central District of California which sought review of the ALJ's decisions under 42 U.S.C. §§ 405(g).[6] The district court stayed the action pending a decision in the Supreme Court in *Astrue v. Capato*, 566 U.S. 541 (2012).[7] Dkt. 12, 12-cv-00094 (C.D. Cal. Feb. 15, 2012). The Supreme Court issued its decision in May 2012, 566 U.S. 541, and on July 26, 2012, the district court granted the Administration's motion to remand the action for further administrative proceedings. Dkt. 20, 12-cv-00094 (C.D. Cal. July 26, 2012).

On remand, the ALJ held a hearing on July 24, 2013. The ALJ issued her Amended Recommended Decisions on

---

[6] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days . . . in the district court of the United States for the judicial district in which the plaintiff resides . . . ." 42 U.S.C. § 405.

[7] *Capato* considered whether, under the Social Security Act, a child needs to show only that they are the biological child of the deceased insured individual, or if they also need to show that they would qualify for inheritance from the decedent under state intestacy law, pursuant to 42 U.S.C. § 416(h). 566 U.S. at 544–45. The Court held that the Administration's interpretation of the Act to require that biological children also satisfy § 416(h) was reasonable and entitled to *Chevron* deference. *Id.* at 545.

January 9, 2014. The ALJ again found that the Delzer children did not qualify as children of Mr. Delzer under § 249.5. The claimants argued that the Informed Consent Form and Addendum satisfied § 249.5. But the ALJ again found that this writing was not sufficient because it was "silent as to possible use . . . of any extra sperm deposited by Mr. Delzer," and it was that sperm which was the "genetic material" used to conceive the Delzer children.

The U.S. District Court for the Central District of California reopened the case on March 17, 2015, and the parties cross-moved for summary judgment. The magistrate judge issued his Report and Recommendation ("R&R"), which affirmed the agency's denial, on October 22, 2015. Like the ALJ, the magistrate judge found that there was "no written statement presented to the agency directly related to Mr. Delzer's sperm donation." On June 21, 2016, District Judge George H. Wu accepted the findings and recommendations of the magistrate judge. On August 22, 2016, Appellants timely filed their Notice of Appeal.

## REASONS FOR CERTIFICATION

To be entitled to child's insurance benefits under the Social Security Act, a claimant must prove that he or she is the "child" of the insured decedent. 42 U.S.C. § 402(d)(1). The claimant is a "child" of the decedent, for purposes of the Act, if he would qualify to inherit from the decedent under the intestacy laws of the state in which the deceased was domiciled at the time of his death. *Id.* § 416(h)(2)(A).

Here, there is no dispute that the Delzer children are entitled to the claimed benefits if they meet the requirements of California Probate Code § 249.5. That provision specifically addresses posthumously conceived children. It provides that, for probate purposes, "a child of the decedent

conceived and born after the death of the decedent shall be deemed to have been born in the lifetime of the decedent if the child or his or her representative proves by clear and convincing evidence that," *inter alia*, "[t]he decedent, in writing, specifies that his or her genetic material shall be used for the posthumous conception of a child of the decedent" and the "specification [is] signed by the decedent and dated." Cal. Prob. Code § 249.5. Because § 249.5 requires written proof of the putative "specification," Mr. Delzer's intentions and desires are not relevant except as they are expressed in writing in the record. The only signed writings in the record that plausibly "specify" that Mr. Delzer intended for his genetic material to be used to conceive children after his death are the Informed Consent, Addendum, and Cryopreservation Forms.

Appellants argue that "Section 249.5(a) does not require that a decedent consent to a particular sample or type of genetic material—it requires only that a decedent consent to the posthumous use of his or her 'genetic material.'" Therefore, they say, § 249.5 is satisfied as to C.O.D.1 and C.O.D.2 because Mr. Delzer "clearly expressed" in the Cryopreservation From "that his wife would have the ability to use his genetic material"—the cryopreserved embryos— "to conceive children even after his death." The government answers that "the consent forms that Mr. Delzer signed specifically addressed only the embryos that the couple had created, not his cryopreserved sperm and not 'genetic material' generally." The government argues that "sperm and embryos are not the same thing," and therefore "it was *not* reasonable to assume that Mr. Delzer's written intentions regarding disposition of embryos created while he was alive would apply to frozen sperm that had not been used for fertilization during his lifetime."

"As we read California law, we are uncertain whether the district court correctly or incorrectly interpreted the relevant statute[]." *Mendoza v. Nordstrom, Inc.*, 778 F.3d 834, 841 (9th Cir. 2015) (certifying a question of statutory interpretation to the California Supreme Court). On one hand, as Appellants argue, the statute does not explicitly state that the "genetic material" in the writing must include the genetic material actually used to conceive posthumously. But, on the other hand, the statute does require that the writing make a "specification"[8] as to using the decedent's genetic material for that purpose. *Phelps v. Stostad*, 16 Cal.4th 23, 32 (Cal. 1997) ("If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose."). These terms may be read to require a proffered writing to identify the genetic material by which posthumous conception may occur. *Kucana v. Holder*, 558 U.S. 233, 243 (2010) ("'Specified' is not synonymous with 'implied' or 'anticipated.'").

We are also uncertain as to which interpretation of the statute better carries out the legislature's stated intent to "focus[] on the intent of the decedent." Assem. Com. on Judiciary, California Bill Analysis, A.B. 1910 Assem., 5/04/2004; *see also Vernoff*, 568 F.3d at 1111 (holding the purpose of § 249.5 was to provide intestacy rights to posthumously-conceived children only "where it is guaranteed the decedent consented to the procedure and the

---

**8** "The dictionary defines 'specify' as 'name or state explicitly or in detail.' (Webster's 7th New Collegiate Dict. (1970) p. 839.) . . . According to the same dictionary, 'specify' also means 'to include as an item in a specification.'" *In re Julian R.*, 47 Cal.4th 487, 497 (Cal. 2009). "Specification" is "[t]he act of making a detailed statement, esp. of the measurements, quality, materials, or other items to be provided under a contract." SPECIFICATION, Black's Law Dictionary (10th ed. 2014).

conception is timely"). Courts interpreting a California statute "must give [the] statute[] a reasonable construction which conforms to the apparent purpose and intention of the lawmakers. . . . '" *Clean Air Constituency v. California State Air Resources Bd.*, 11 Cal.3d 801, 813–814 (Cal. 1974). Deeming consent to posthumous conception under specific and limited circumstances to be consent to posthumous conception under different, non-included circumstances, as Appellants here urge us to do, would seem to unmoor the inquiry from the decedent's written intent and allow for recognition of posthumous conceptions under conditions that the decedent never anticipated, let alone "specified" in writing. *Cf.* Cal. Civ. Code § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."). Conversely, however, an implied specificity requirement will sometimes defeat the intent of decedents who had no way of anticipating what particular sample of his genetic material or what particular method of conception would ultimately prove successful.

This question meets the criteria for certification. "On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the Supreme Court may decide a question of California law if: (1) The decision could determine the outcome of a matter pending in the requesting court; and (2) There is no controlling precedent." Cal. R. Ct. 8.548; *Mendoza*, 778 F.3d at 839 (certifying question of statutory interpretation where the court "f[ound] both interpretations plausible," "found no legislative history that bears on th[e] question," and "found [no] California appellate case that answers it"), *certified question answered*, 2 Cal. 5th 1074 (Cal. 2017). First, this question is dispositive. If written consent to posthumous conception by

*some* means satisfies the statute as to posthumous conception by *any* means, then Appellants have met the applicable statutory requirements, and the district court should be reversed.  But if § 249.5 requires *specific* written consent to the use of the genetic materials as *actually used* to achieve posthumous conception, then the claimants have not met their evidentiary burden under the statute, and the district court should be affirmed.  Second, there is no controlling precedent.

### STAY OF PROCEEDINGS AND WITHDRAWAL OF SUBMISSION

The Clerk of this court is hereby directed to file in the California Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, copies of all relevant briefs and excerpts of the record, and an original and ten copies of this order and request for certification, along with a certification of service on the parties, pursuant to California Rule of Court 8.548(c), (d).  The Clerk is further directed to administratively close this docket, pending further order.

The submission of this appeal is withdrawn, and all further proceedings in this case before our court are stayed pending final action by the Supreme Court of California, save for any petition for rehearing regarding this order.  The parties shall notify the Clerk of this court within fourteen days of the Supreme Court of California's acceptance or rejection of certification, and again, if certification is accepted, within fourteen days of the Supreme Court of California's issuance of a decision.

**QUESTION    CERTIFIED;    PROCEEDINGS STAYED.**