# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

*In re* CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
(MATTISON v SOCIAL SECURITY COMMISSIONER)

Docket No. 144385. Argued November 15, 2012. Decided December 21, 2012.

Pamela Mattison, on behalf of her twin children, brought an action in the United States District Court for the Western District of Michigan against the Social Security Commissioner, seeking social security survivors' benefits for the children after the Social Security Administration denied her application for benefits and she was unable to obtain relief through administrative appeals. The twins were conceived by in vitro fertilization after their father, Jeffery Mattison, had died. The parties stipulated that the determinative issue was whether plaintiff's twins could inherit from Jeffery under Michigan intestacy law as his children. The district court entered an order approving a magistrate's recommendation to ask the Michigan Supreme Court to resolve the question. In accordance with MCR 7.305(B), the district court certified the following question to the Supreme Court:

> Whether M.M. and M.M. [plaintiff's twins], conceived after the death of Jeffery Mattison via artificial insemination using his sperm, can inherit from Jeffery Mattison as his children under Michigan intestacy law.

The Supreme Court ordered and heard oral argument on whether to answer the certified question. 493 Mich __ (Docket No. 144385, entered September 21, 2012).

In an opinion by Justice MARILYN KELLY, joined by Justices MARKMAN, HATHAWAY, MARY BETH KELLY, and ZAHRA, the Supreme Court *held*:

Children who are born after the death of a parent and who were not in gestation at the time of the parent's death may not inherit from that parent under Michigan intestacy law.

1. The Social Security Act authorizes disbursement of survivors' benefits for children who were dependent on a deceased worker before his or her death. To be eligible, an applicant must demonstrate that he or she (1) is the child of the deceased wage earner and (2) was dependent on that person at the time of that person's death. Under 42 USC 416(h)(2)(A), in determining whether an applicant is the child of a deceased individual, the Social Security Commissioner must apply the law that would be applied in determining the devolution of intestate personal property by the courts of the state in which the insured individual was

domiciled at the time of his or her death. In this case, Jeffery was domiciled in Michigan when he died, so Michigan's intestacy law is controlling.

2. Under the relevant Michigan statutory provisions, there are two groups of people relevant to this case who could have acquired intestate inheritance rights: (1) descendants alive at the moment of the decedent's death who lived more than 120 hours immediately following the decedent's death and (2) descendants in gestation at the time of the decedent's death who lived 120 hours after birth. Because plaintiff's eggs were not fertilized and the embryos not transferred until after Jeffery's death, plaintiff's twins could not inherit from Jeffery by intestate succession under Michigan law. Plaintiff's twins were not in gestation at Jeffery's death, so no inheritance rights vested in them at that time pursuant to MCL 700.2108, and because the twins were not living at the time of his death, they had no inheritance rights as his heirs under MCL 700.2104.

3. MCL 700.2114(1)(a) creates a presumption that a child is the natural issue of both spouses if born or conceived during the marriage. Included within that presumption are children conceived by a married woman with the consent of her husband following the use of assisted reproductive technology. The statute, however, does not allow the twins to inherit from Jeffery because the twins were not conceived or born during plaintiff and Jeffery's marriage given that the marriage legally terminated upon Jeffery's death. Because nothing in the relevant statutory provisions contemplates intestate succession rights for plaintiff's twins, they did not survive Jeffery as his heirs in the eyes of the law.

Certified question answered in the negative; case returned to the district court for further proceedings.

Justice MARILYN KELLY, joined by Justice CAVANAGH, concurring, stated that although the Supreme Court's decision was accurate and required by the law, it was lamentable. The facts established that Jeffery had intended that any children conceived by in vitro fertilization using his sperm be entitled to the same rights as naturally conceived children, without regard to when they were conceived. Given the increasing prevalence of assisted reproductive technology, the situation was likely to reoccur. The Legislature is capable of providing for after-conceived children to inherit from a parent by intestate succession and should specifically address the issue.

Chief Justice YOUNG, dissenting, would have declined to answer the certified question because the Michigan Supreme Court lacks the constitutional authority to issue advisory opinions other than as described in 1963 Const, art 3, §8. While this position did not garner majority support, certified questions should be accepted and answered sparingly and only when the Michigan legal issue is both unclear and pivotal to the federal case that prompted the request for the certified question. There is nothing remotely unclear or debatable regarding the ability of after-born children to take as heirs under Michigan's intestacy laws—the children must be "in gestation" under MCL 700.2108 at the time of the decedent's death. Therefore, the district court should have been easily able to determine for itself the answer to its certified question without the assistance of the Supreme Court.

©2012 State of Michigan

# Opinion

Chief Justice:    Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED DECEMBER 21, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

_____

*In re* CERTIFIED QUESTION FROM THE
UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN

No. 144385

_____

PAMELA MATTISON, on behalf of M.M.
and M.M.,

          Plaintiff,

v

SOCIAL SECURITY COMMISSIONER,

          Defendant.

_____

BEFORE THE ENTIRE BENCH

MARILYN KELLY, J.

Plaintiff, Pamela Mattison, gave birth to twins who were conceived by artificial insemination after their father, Jeffery Mattison, had died. She sought social security survivors' benefits for the children based on Jeffery's earnings. The Social Security Administration denied her application, and an administrative law judge affirmed that

decision. Plaintiff then filed an action in the United States District Court for the Western District of Michigan challenging the decision. That court has asked us to rule on the determinative issue, which is whether the children can inherit from Jeffery under Michigan intestacy law. Only if they can inherit would they be entitled to social security survivors' benefits.

The district court certified the question to this Court in accordance with MCR 7.305(B) in these words:

> Whether M.M. and M.M. [plaintiff's twins], conceived after the death of Jeffery Mattison via artificial insemination using his sperm, can inherit from Jeffery Mattison as his children under Michigan intestacy law.

Having heard oral argument, we grant the district court's request to answer the question. We hold that, under Michigan intestacy law, plaintiff's children cannot inherit from Jeffery. We return the matter to the district court for further proceedings as that court deems appropriate.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff and Jeffery Mattison were married in 1995. In 1997, plaintiff became pregnant with the aid of artificial insemination and gave birth to a daughter. Plaintiff and Jeffery wanted more children but were unable to conceive naturally because of Jeffery's medical conditions, which included lupus, diabetes, high blood pressure, and kidney failure.

Because chemotherapy treatment for lupus would damage Jeffery's sperm, he interrupted his chemotherapy treatment and deposited his semen into a sperm bank, where it was frozen and stored. Soon after the birth of his daughter, Jeffery executed a

2

general durable power of attorney that appointed plaintiff as his attorney-in-fact. Included among the powers given to her was the authority to "take any and all action necessary pertaining to any sperm or embryos [Jeffery] may have stored including their implantation or termination." In October 2000, plaintiff and Jeffery began an in vitro fertilization program in which plaintiff received daily hormone injections. These were necessary to allow her eggs to be harvested.

Jeffery died unexpectedly on January 18, 2001, in Michigan. Plaintiff continued the in vitro fertilization program after his death and underwent egg retrieval on January 28, 2001. Those eggs were inseminated with Jeffery's sperm and transplanted into plaintiff on January 30, 2001. As a result of the transplantation process, plaintiff gave birth to twins on October 8, 2001.

On October 23, 2001, plaintiff filed an application for social security survivors' benefits based on Jeffery's earnings records on behalf of her twins. The Social Security Administration denied the application and later denied reconsideration. Plaintiff then requested a hearing on the matter. The presiding administrative law judge decided that plaintiff's twins were not entitled to social security survivors' benefits because they could not inherit from Jeffery under Michigan intestacy law. The Social Security Administration Appeals Council denied plaintiff's request for review of the administrative law judge's decision.

In August 2005, plaintiff filed suit in the United States District Court for the Western District of Michigan, challenging the denial of benefits. The parties stipulated that the determinative issue is whether plaintiff's twins can inherit from Jeffery under Michigan intestacy law as his children. The district court entered an order approving a

3

magistrate's recommendation to ask this Court to resolve the question. For reasons unknown, the question was not filed in this Court until nearly five years later.

We granted oral argument on whether to answer the question certified to us.[1]

## II. ANALYSIS

## A. LEGAL BACKGROUND

The Social Security Act authorizes disbursement of survivors' benefits for children who were dependent on a deceased worker before his or her death.[2] As the United States Supreme Court has noted, the purpose of providing survivors' benefits is to protect children from a loss of support resulting from the death of a parent.[3] However, not all children of a deceased parent are eligible for these benefits. To be eligible, an applicant must demonstrate that he or she (1) is the "child" of the deceased wage earner[4] and (2) was dependent on that person at the time of that person's death.[5]

Whether an applicant is the child of a deceased wage earner for purposes of the Social Security Act is governed by 42 USC 416(h)(2)(A), which provides:

> In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter [42 USC 401 through 434], the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal

---

[1] *In re Certified Question from the United States Dist Court for the Western Dist of Mich*, 493 Mich ___ (Docket No. 144385, entered September 21, 2012).

[2] See generally 42 USC 402(d).

[3] *Mathews v Lucas*, 427 US 495, 507; 96 S Ct 2755; 49 L Ed 2d 651 (1976).

[4] 42 USC 402(d)(1) and (2).

[5] 42 USC 402(d)(1)(C)(ii).

4

property by the courts of the State in which such insured individual is domiciled at the time such applicant files application or, *if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death . . . .* [Emphasis added.]

Thus, because Jeffery was domiciled in Michigan when he died, the issue to be resolved is whether our state intestacy law permits the twins to inherit from Jeffery.

The United States Supreme Court recently spoke on this subject in the case of *Astrue v Capato*.[6] The respondent's husband had died 18 months before she gave birth to twins conceived through in vitro fertilization using the decedent's frozen sperm. The respondent applied for social security survivors' benefits on their behalf. When the Social Security Administration denied her application, she brought an action in the courts to review the decision.

The trial court found that the respondent's deceased husband was domiciled in Florida at his death. Under Florida law, children conceived after a parent's death cannot inherit from that parent through intestate succession and thus cannot receive social security survivors' benefits as children of that parent. The United States Court of Appeals for the Third Circuit reversed that decision. It applied the Social Security Act and opined that the undisputed biological children of an insured and his widow qualify for survivors' benefits without regard to state intestacy law.[7] But the United States Supreme Court reversed the judgment of the Third Circuit. It held that the question

---

[6] *Astrue v Capato*, 566 US ___; 132 S Ct 2021; 182 L Ed 2d 887 (2012).

[7] *Capato v Social Security Comm'r*, 631 F3d 626, 630 (CA 3, 2011).

5

whether posthumously conceived children qualify for social security survivors' benefits must be determined under state intestacy law.[8]

Michigan law has long established that the rights to intestate inheritance vest at the time of a decedent's death.[9] They are governed by statutory provisions found in article II, part 1 of the Estates and Protected Individuals Code (EPIC).[10]

Several EPIC provisions bear on whether plaintiff's twins can inherit from Jeffery. The first, MCL 700.2101(1), provides that "[a]ny part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this act . . . ." Next, MCL 700.2103 provides that "[a]ny part of the intestate estate that does not pass to the decedent's surviving spouse . . . passes . . . to [certain] . . . individuals who survive the decedent[.]" MCL 700.1107(j) defines "survive" as meaning that "an individual neither predeceases an event, including the death of another individual, nor is considered to predecease an event under [MCL 700.2104 or MCL 700.2702]."[11]

---

[8] *Astrue*, 566 US at ___; 132 S Ct at 2031-2033.

[9] *In re Adolphson Estate*, 403 Mich 590, 593; 271 NW2d 511 (1978) ("Determinations of heirs are to be governed by statutes in effect at the time of death . . . ."); *In re Dempster's Estate*, 247 Mich 459, 462; 226 NW 243 (1929), quoting *In re Pivonka's Estate*, 202 Iowa 855; 211 NW 246 (1926) ("'The estate of the insured' came into being as the estate of a deceased person . . . instantly upon the death of such deceased person. The heirs of a decedent are . . . to be determined by ascertaining upon whom the law casts the estate immediately upon the death of the ancestor.").

[10] MCL 700.2101 *et seq*.

[11] *Random House Webster's College Dictionary* (2001) similarly defines "survive" as, among other things, "**1.** to remain alive, as after the death of another or the occurrence of some event; continue to live. . . . **4.** to continue to live or exist after the death, cessation,

6

Likewise, MCL 700.2106(3)(b) defines "surviving descendant" as "a descendant who neither predeceased the decedent nor is considered to have predeceased the decedent under [MCL 700.2104]." MCL 700.2104 states, "An individual who fails to survive the decedent by 120 hours is considered to have predeceased the decedent for purposes of . . . intestate succession, and the decedent's heirs are determined accordingly." Hence, an individual must be alive when the decedent dies and live more than 120 hours afterward to inherit from the decedent's estate under the laws of intestate succession.

Also relevant is MCL 700.2108 which states, "An individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth." Finally, MCL 700.2114(1)(a) provides, in pertinent part:

> If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for purposes of intestate succession. A child conceived by a married woman with the consent of her husband following utilization of assisted reproductive technology is considered as their child for purposes of intestate succession.

On the basis of these provisions, there are two groups of people relevant to this case that may acquire intestate inheritance rights: (1) descendants alive at the moment of the decedent's death who live more than 120 hours immediately following the decedent's death and (2) descendants in gestation at the time of the decedent's death who live 120 hours after birth.

---

or occurrence of." Thus, to survive the death of another, one must be living at the time of that person's death.

7

## B. APPLICATION

Considering these statutes, plaintiff's twins cannot inherit from Jeffery by intestate succession. The record shows that plaintiff's eggs were not inseminated with Jeffery's sperm and implanted until January 30, 2001, which was 12 days after Jeffery died. Because plaintiff's twins were not in gestation at Jeffery's death, no inheritance rights vested in them at that time pursuant to MCL 700.2108. Moreover, because the twins were not living at the time of his death, they had no inheritance rights as heirs pursuant to MCL 700.2104.

Nor does MCL 700.2114(1)(a) allow the twins to inherit from Jeffery. That statute indicates that, for purposes of intestate succession, a child is presumed to be the natural issue of both spouses if born or conceived during the marriage. It includes in that presumption children conceived by a married woman with the consent of her husband following the use of assisted reproductive technology. Applying that provision here, the twins were neither conceived nor born during plaintiff and Jeffery's marriage because "[m]arriage is a status that legally terminates . . . upon the death of a spouse . . . ."[12] Accordingly, the twins are not Jeffery's children for purposes of the state laws of intestate succession and, therefore, they cannot inherit from him.[13]

In sum, nothing in EPIC or in other relevant statutory provisions contemplates intestate succession rights for plaintiff's twins. Because they were conceived and born

---

[12] *Byington v Byington*, 224 Mich App 103, 109; 568 NW2d 141 (1997).

[13] Although it is not relevant to our determination in this case, we note that Jeffery died without a will.

after Jeffery's death, they did not survive him as his heirs in the eyes of the law. Therefore, we answer the certified question in the negative.

## III. CONCLUSION

We hold that under Michigan intestacy law, plaintiff's twins, who were conceived after the death of Jeffery Mattison through artificial insemination using his sperm, cannot inherit from Jeffery as his children. We answer the certified question in the negative and return the case to the district court for such further proceedings as that court deems appropriate.

Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

9

STATE OF MICHIGAN

SUPREME COURT

_____

*In re* CERTIFIED QUESTION FROM THE          No. 144385
UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN

_____

PAMELA MATTISON, on behalf of M.M.
and M.M.,

         Plaintiff,

v

SOCIAL SECURITY COMMISSIONER,

         Defendant.

_____

MARILYN KELLY, J. (*concurring*).

I write separately to express my view that although the Court's decision in this matter is accurate and required by the law, it is lamentable.

It is undisputed that the twins are Jeffery Mattison's biological children in that his sperm were used to inseminate plaintiff's eggs. Yet Michigan intestacy law prevents these children from inheriting from their father and, as a consequence, from receiving social security survivors' benefits. This is because our Legislature has not made provision for children conceived by assisted reproductive technology after a parent's death to inherit from the parent by intestate succession. This situation will likely reoccur.

It is not known whether the Legislature has ever considered the problem presented here. If it had, it would have been confronted with the fact that gestation by assisted reproductive technology can occur long after the death of one parent. If the estate of the deceased parent had to remain open while the widow or widower contemplated the use of assisted reproductive technology, timely probating of the estate could be frustrated.[1]

Standing in contrast to that consideration is the fact that one goal of the Estates and Protected Individuals Code (EPIC)[2] is "[t]o discover and make effective a decedent's intent in distribution of the decedent's property."[3] Two facts in this case relate to this goal: (1) the twins are undisputedly Jeffery's children and (2) Jeffery executed a power of attorney appointing plaintiff as his attorney-in-fact with the power to "take any and all action necessary pertaining to any sperm or embryos [he] may have stored including their implantation or termination." Jeffery intended that any children conceived by in vitro fertilization using his sperm be entitled to the same rights as naturally conceived children, without regard to when they were conceived.

It is not the role of this Court to fashion a legal remedy allowing after-conceived children to inherit from a deceased parent by intestate succession. But the Legislature is capable of providing for it. For instance, the Legislature could provide for a limited period after a person's death during which his or her spouse could arrange for a child to be conceived by assisted reproductive technology. It could provide that a child conceived

---

[1] See MCL 700.1201(c).

[2] MCL 700.1101 *et seq*.

[3] MCL 700.1201(b).

within that period would be entitled to inherit from the deceased parent by intestate succession. Alternatively, the Legislature could mandate that the conception occur within a reasonable time after a spouse's death in order for the child to be eligible to inherit.[4]

Some state legislatures have already grappled with the issue, while others have not, as summarized by this chart that also identifies the source of the law in each state:[5]

---

[4] See, e.g., Carpenter, *A chip off the old iceblock: How cryopreservation has changed estate law, why attempts to address the issue have fallen short, and how to fix it*, 21 Cornell J L & Pub Policy 347, 380 (2011) (explaining that some states have enacted legislation that requires "(1) the decedent, in writing, [to] authorize[] the surviving spouse to use the genetic material, and (2) the child [to be] born within two years after the decedent's death").

[5] *Id*. at 403-404. See also Lorio, *Conceiving the inconceivable: Legal recognition of the posthumously conceived child*, 34 American College of Trust & Estate Counsel L J 154, 156-162 (2008). After Professor Benjamin Carpenter's article was published in 2011, the Nebraska Supreme Court held that Nebraska's statutes exclude posthumously conceived children from inheriting by intestate succession. See *Amen v Astrue*, 284 Neb 691; 822 NW2d 419 (2012).

TABLE 1: APPROACHES TO POSTHUMOUSLY CONCEIVED CHILDREN
FOR PROBATE PURPOSES BY JURISDICTION

| Source[6] | Includes | Excludes | Unclear | Jurisdiction |
|---|---|---|---|---|
| 1946 MPC | | | 4 | Indiana, Maryland, Ohio, Pennsylvania |
| 1969 UPC | | | 3 | Maine, Nebraska, Tennessee |
| 1988 USCACA | | 1 | | Virginia |
| 1990 UPC | | | 8 | Alaska, Arizona, Hawaii, Michigan, Montana, Vermont, West Virginia, Wisconsin |
| 2000 UPA | | | 7 | Alabama, Delaware, New Mexico, Texas, Utah, Washington, Wyoming |
| 2008 UPC | 2 | | | Colorado, North Dakota |
| Other statute | 4 | 6 | 12 | *Includes*: California, Florida, Iowa, Louisiana *Excludes*: Georgia, Idaho, Minnesota, South Carolina, South Dakota, New York *Unclear*: Connecticut, District of Columbia, Illinois, Kansas, Missouri, Oklahoma, Kentucky, North Carolina, Oregon, Rhode Island, Mississippi, Nevada |
| Caselaw | 2 | 2 | | *Includes*: Massachusetts (*Woodward*);[7] New Jersey (*Kolacy*)[8] *Excludes*: Arkansas (*Finley*);[9] New Hampshire (*Khabbaz*)[10] |
| **Total** | **8** | **9** | **34** | |

---

[6] "MPC" stands for Model Probate Code. "UPC" stands for Uniform Probate Code. "USCACA" stands for Uniform Status of Children of Assisted Conception Act. "UPA" stands for Uniform Parentage Act.

[7] *Woodward v Social Security v Comm'r*, 435 Mass 536; 760 NE2d 257 (2002).

[8] *In re Kolacy Estate*, 332 NJ Super 593; 753 A2d 1257 (2000).

[9] *Finley v Astrue*, 372 Ark 103; 270 SW3d 849 (2008).

[10] *Khabbaz v Social Security Admin Comm'r*, 155 NH 798; 930 A2d 1180 (2007).

It is incumbent on the Legislature to keep our laws abreast of our times. This is especially true given the "growing and complex area of nontraditional family life" and the increasing prevalence of assisted reproductive technology.[11]

For these reasons, I urge our Legislature to specifically address the issue presented in this case in the near future.

Marilyn Kelly
Michael F. Cavanagh

---

[11] Messmer, *Assisted reproductive technology: A lawyer's guide to emerging law and science*, 3 J Health & Biomed L 203, 204 (2007).

STATE OF MICHIGAN

SUPREME COURT

_____

*In re* CERTIFIED QUESTION FROM THE
UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN

_____

PAMELA MATTISON, on behalf of M.M.
and M.M.,

      Plaintiff,

v                                                                                No. 144385

SOCIAL SECURITY COMMISSIONER,

      Defendant.

_____

YOUNG, C.J. (*dissenting*).

      While I agree with the majority's analysis of our state's intestacy laws, I respectfully dissent and would decline to answer the certified question. I do so for two reasons.

      First, I continue to believe that this Court lacks the constitutional authority to issue advisory opinions[1] other than as described in article 3, § 8 of Michigan's 1963

_____

[1] See *In re Certified Question from the United States Dist Court for the Eastern Dist of Mich (Wayne Co v Philip Morris, Inc)*, 622 NW2d 518 (Mich, 2001) (YOUNG, J., concurring); *In re Certified Questions from the United States Court of Appeals for the Sixth Circuit*, 472 Mich 1225 (2005) (YOUNG, J., concurring); *In re Certified Question (Waeschle v Oakland Co Med Examiner)*, 485 Mich 1116, 1117 (2010) (YOUNG, J., dissenting).

Constitution.[2]  My position regarding the Court's constitutional authority did not prevail, and I accept that the Court has determined otherwise.[3]  However, my constitutional reservation counsels that this Court should accept and answer certified questions from the federal courts sparingly and only when the Michigan legal issue is a debatable one and pivotal to the federal case that prompted the request for the certified question.  It is this prudential concern that I now address.

I concede that the question whether the children at issue are "heirs" of their deceased father under Michigan intestacy law is determinative to the federal case.[4]  Under federal law, the children are entitled to social security survivors' benefits if the children can take as heirs from their father under Michigan intestacy law, MCL 700.2101 *et seq.*[5]  The children's entitlement to take as heirs is provided by MCL 700.2103, under which it must be shown that the children are both their father's descendants[6] *and* that they

---

[2] Const 1963, art 3, § 8 grants this Court limited authority to issue advisory opinions: "Either house of the legislature or the governor may request the opinion of the Supreme Court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date."

[3] In contrast to the narrow scope of authority described in Const 1963, art 3, § 8, MCR 7.305(B) authorizes this Court to answer certified questions from "a federal court, [foreign] state appellate court, or tribal court." I believe that MCR 7.305(B) exceeds this Court's judicial power and is unconstitutional.

[4] Although the question is determinative, neither the federal court nor the plaintiff felt much urgency because the certified question was not filed with this Court for nearly five years after the federal court ordered that the question be certified.

[5] See 42 USC 416(h)(2)(A).

[6] Whether the children are their father's descendants has not been a point of dispute in this litigation. MCL 700.2114 describes various ways in which "[t]he parent and child relationship" may be established in order to show that a claimant is a descendant of a

2

survived their father.[7]  However, as the majority opinion conclusively establishes, the question whether the children may be considered to have been alive at the time of their father's death is not debatable under our intestacy laws—a point plaintiff's counsel conceded at oral argument.  The only way that the children may be deemed to have survived their father is if they were "in gestation" at the time of their father's death.[8] Thus, the only way plaintiff could prevail is if this Court failed to give the word "gestation" its plain and ordinary meaning.  Indeed, plaintiff's counsel urged that these children could be deemed "in gestation" by construing gestation as a "process" that included hormone therapy administered to the mother before the father's death as well as in vitro fertilization and embryo transfer that occurred after the father's death. This, of course, is no more than a call for construction by eisegesis and would require an entirely apocryphal interpretation of a common term: gestation.

I believe that no serious debate regarding the plain language of the relevant laws exists and that no reasonable construction of our laws would permit the children to take

---

decedent. However, merely showing that a claimant is a descendant under MCL 700.2114 is insufficient to establish an entitlement to take as an heir under Michigan's laws of intestate succession. Rather, the plain language of MCL 700.2103 also requires that the descendant "survive the decedent[.]"

[7] MCL 700.1107(j) defines "survive" to mean that "an individual neither predeceases an event, including the death of another individual, nor is considered to predecease an event under [MCL 700.2104 or MCL 700.2702]." Thus the children are deemed to have survived their father if they did not die before, i.e., did not predecease, the death of their father.

[8] MCL 700.2108, concerning afterborn heirs, provides in full as follows: "An individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth."

3

as heirs of their deceased father under our intestacy provisions.[9]  Indeed, both the Social

Security Administration and the administrative law judge who reviewed the case applied

---

[9] Contrary to the assertions of the concurrence, it cannot be said that "[i]t is not known whether the Legislature has ever considered the problem presented here." *Ante* at 2.  For more than 130 years, Michigan's law regarding the intestate inheritance rights of afterborn children remained substantively unchanged, simply providing that "[p]osthumous children are considered as living at the death of their parents."  1846 RS, ch 67, §13; 1857 CL 2824; 1871 CL 4321; How Stat 5784; 1897 CL 9076; 1915 CL 11807; 1929 CL 13452.  See also 1939 PA 288, ch II, § 85; 1948 CL 702.85; 1970 CL 702.85. If that historical statutory language had remained unaltered, the Mattison children would be entitled to inherit as heirs because they are the "posthumous children" of their natural father, Jeffery Mattison.

However, beginning with 1978 PA 642, the Legislature amended the law, providing in former MCL 700.109(2) that "[h]eirs of the decedent *conceived before his death* but born thereafter shall inherit as if they had been born in the lifetime of the decedent." (Emphasis added.)  With the enactment of the Estates and Protected Individuals Code (EPIC), 1998 PA 386, MCL 700.1101 *et seq*., the law was amended to reflect the current language, requiring that a child be "in gestation" at the time of a decedent's death in order to be treated as living at that time.  Thus, the Legislature has *twice* amended the law to unambiguously reflect that an afterborn child may take as an heir under our intestate succession provisions provided that the child is *in utero* at the time of a decedent's death.

Moreover, the enactment of MCL 700.2114(1)(a) affirmatively repudiates any claim that the Legislature failed to consider the implications of advanced reproductive technology on Michigan's law of intestate succession. MCL 700.2114(1)(a) states that the necessary "parent and child relationship" may be established when a "child [is] conceived by a married woman with the consent of her husband following utilization of assisted reproductive technology . . . ."

While the concurrence believes that the Legislature's failure to allow after-conceived children to inherit under our law of intestate succession is lamentable, such a policy choice is perfectly consistent with the Legislature's stated "purposes and policies" underlying the enactment of EPIC, which include "promot[ing] a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's successors."  MCL 700.1201(c).  Because frozen human reproductive material remains viable for many years, providing an open-ended period of entitlement for after-conceived children to take as heirs would prevent the closure of an intestate decedent's estate for an indefinite period of time.

4

the common meaning of gestation and denied survivor's benefits to the children because, as the Social Security Administration phrased it, the children "were not in gestation at the time of Mr. Mattison['s] death." That being the case, the federal court should have been easily able to determine for itself the very answer to its certified question that the majority has provided. As such, this would appear to be the textbook example of the kind of certified question that this Court ought to have exercised its discretion and declined to answer.

For these reasons, I respectfully dissent and would decline to answer the certified question.

Robert P. Young, Jr.